COMMONWEALTH OF PENNSYLVANIA
COUNTY OF ERIE:



# POLICE CRIMINAL COMPLAINT

Magisterial District Number: 06-1-03

District Justice Name: **HON. John VENDETTI**

Address: 718 West 18t" Street
      Erie, PA 16502

Telephone: (814) 451-6528

**COMMONWEALTH OF PENNSYLVANIA**
**U3**

DEFENDANT: **MARK SANDERS**
1931 WEST 32ND STREET
ERIE, PA 16508

Docket No.: **(41 ~~ 3** Date

Filed: Q - r)

| Defendant's Race\Ethnicity | Defendant's Sex | Defendant's D.O.B. | Defendant's Social Security # | Defendant's SID# |
|---|---|---|---|---|
| X White    U Native American 0 Black | O Female X Male | | 190582060 | |
| O Hispanic 0 Asian    O Unknown | | 08/29/63 | | |

| Defendant's A.K.A. | Defendant's Vehicle Information; Plate Number    State | Registration Sticker (M M/YY ) | Defendant's Driver's License Number: 20227501 State: PA |
|---|---|---|---|

| Complaint Incident Number E 1-903536 | Complaint\incident Numbers if other Participants | UCR\J\NIBRS Code 071 |
|---|---|---|

District Attorney's Office     D Approved O Disapproved because:

(The district attorney may require that the complaint, arrest warrant affidavit, or both be approved by the attorney for the Commonwealth prior to filing. Pa.R.Cr.P.107.)

    (Name of Attorney for Commonwealth - Please Print or Type)(Signature of Attorney for Commonwealth)(Date)

I. __ Trooper Jay D. McKee/5751
        (Name of Al7iant - Please Print or Type)                (Officer Badge Numbe\NLD.)

of The Pennsylvania State Police          2500
(Identify Department or Agency Represented and Political Subdivision)    (Policy Agency ORI Number)    (Originating Agency Case Number (OCA))

do hereby state: (check the appropriate box)
i. X I accuse the above named defendant who lives at the address set forth above
    0 1 accuse the defendant whose name is unknown to me but who is described as
    111 accuse the defendant whose name and popular designation or nickname is unknown to me and whom f have therefore designated
    as John Doe with violating the penal laws of the Commonwealth of Pennsylvania at West End Auto Body, Inc., 1702 West 20th Street, in Erie County, PA on or about 1996 - October 1998
        (Place-Political Subdivision)

    Participants were: (if there were participants, place their names here, repeating the name of above defendant) **Mark Sanders, Daniel Strong, Julie Strong (aka Julie Strong Grehl), Chris Strong and Mark Sanders**

2. The acts committed by the accused were:
    (Set forth a summary of the facts sufficient to advise the defendant of the nature of the offense charged. A citation to the statute allegedly violated. without more, is not sufficient. In a summary case, you must cite the specific section and subsection of the statute or ordinance allegedly violated.)



Defendant's Name: **MARK**

Docket

**POLICE**

**CRIMINAL COMPLAINT**

PAGE TWO OF

FOUR

COUNT 1 UNSWORN **FALSIFICATION TO AUTHORITIES 18 PA. C.S. §4904(a)( )d(q)**      **(M2),**

In that the actor, did, through his own conduct and/or the conduct of others, with intent to mislead a public servant, namely, the Commonwealth of Pennsylvania, Department of Transportation employees, in performing said public servant's official function, submit or invite reliance on a writing, namely, PennDOT forms, which said actor(s) knew to be forged, altered or otherwise lacking in authenticity, to-wit; the actor, an Erie Police Officer, signed PennDOT forms which were submitted to PennDOT and/or allowed others to sign his name on PennDOT forms which were submitted to PennDOT, without verifying the information thereon and/or to ~ennDOT forms which contained false and/or misleading information.      V

COUNT 2    CRIMINAL CONSPIRACY           18 PA. C.S. §903 (a) (1) /4904(a)(t),l(a)
           UNSWORN FALSIFICATION TO AUTHORITIES                              (M2)

In that the actor did conspire and agree with Dan Strong and/or Julie Strong a/k/a Julie Grehl and/or Chris Strong and/or others to commit a crime, namely, Unsworn Falsification to Authorities and with the intent of promoting or facilitating its' commission did agree that one or more of them would engage in conduct that would
constitute said crime or an attempt or solicitation to commit such crime, and that in furtherance thereof, that they or one or more of them did commit the overt acts of submitting or inviting reliance on a writing and/or writings,
namely, PennDOT forms, which they or one or more of them knew to be forged, altered **or otherwise lacking in authenticity.**

COUNT 3 DECEPTIVE OR FRAUDULENT BUSINESS      18 PA. C.S. §4107 (a) (6)      (F3)V
        PRACTICES

That the actor did, through his own conduct and/or the conduct of others, in the course of business make false and/or misleading written statements for the purpose of obtaining property; to-wit: the actor, an Erie Police officer, signed PennDOT forms which were submitted to PennDOT and/or allowed others to sign his name on PennDOT forms which were submitted to PennDOT, without verifying the information thereon, said forms bring utilized to obtain titles to motor vehicles.

COUNT 4    CRIMINAL CONSPIRACY           18 PA. C.S. §903(a)(1)/4107         v-¹
           DECEPTIVE OR FRAUDULENT BUSINESS PRACTICES                       (F3)

In that the actor did conspire and agree with Dan Strong and/or Julie Strong a/k/a Julie Grehl and/or Chris Strong and/or others to commit a crime, namely, Deceptive or Fraudulent Business Practices and with the intent of promoting or facilitating its' commission did agree that one or more of them would engage in conduct that would
constitute said crime or an attempt or solicitation to commit such crime, and that in furtherance thereof, that they or one or more of them did commit the overt acts of, while in the course of business, making false and/or misleading written statements for the purpose of obtaining property.

COUNT 5 TAMPERING WITH PUBLIC RECORDS      18 PA. C.S. §4911(a)(1)      (F3) v/
        OR INFORMATION

In that the actor, by his own conduct and/or the conduct of others, knowingly made or allowed to be made false entries in or false alterations of any record, document or thing belonging to, or received or kept by the government for

**POLICE**

Defendant's Name: **MARK**                                   **CRIMINAL COMPLAINT**

Docket Number:                                                    PAGE THREE OF FOUR

**COUNT 5 (continued)**

information or record, or required by law to be kept by others for information of the government,:towit: the actor, an Erie Police Officer, signed PennDOT forms which were submitted to Penn DOT and/or allowed others to sign his name on PennDOT forms which were submitted to PennDOT,without verifying the information thereon, with intent to **defraud and/or injure another**

**COUNT 6 TAMPERING WITH** *PUBLIC* **RECORDS**                    **18 PA. C.S. §4911(a)(2)        (F3)**
**         OR INFORMATION**

In that the actor did by his own conduct and/or the conduct of others, make, ptesent or;;use any record, document or thing knowing it to be false; and with intent that it be taken as a genuine part of information or records received or kept by the government for information or record, or required by law to be kept by others for information of the government, to-wit; the actor, an Erie Police Officer, signed PennDOT forms which were submitted to PennDOT and/or allowed others to sign his name on PennDOT forms which were submitted to PennDOT, without verifying the information thereon, with the intent to defraud PennDOT and/or injure owners/lienholders of vehicles.

**COUNT 7    CRIMINAL CONSPIRACY**                    **18 PA. C.S. §903 (a) (1)/        (F3)**
**           TAMPERING WITH PUBLIC RECORDS OR INFORMATION**

In that the actor did conspire and agree with Dan Strong and/or Julie Grehl a/k/a Julie Strong and/or Chris Strong and/or others to commit a crime, namely, Tampering with Public Records or Information, and with the intent of promoting or facilitating its' commission did agree that one or more of them would engage in conduct that would
constitute said crime or an attempt or solicitation to commit such crime, and that in furtherance thereof, that they or one or more of them did commit the overt acts of engaging in the conduct as described in the two counts of
Tampering with Public Records above.


all of which were against the peace and dignity of the Commonwealth of Pennsylvania and contrary to the Act of Assembly, or in violation of



| V'1. 4904 (Section) | r2. 4107 | − | (aXI)&(2) (Subsection) | of the | 18 PA CS. (PA Statute) | 1 (counts) |
| (sq t/ 3. 9031) | " | - | (a)(6) (Subo ) / (a)(1)k)ii (Subsection) | of the 18 PA CS. (PA Statute) / of the _ 18 PA CS. (PA Statute) | _ 1 (counts) / 2 (counts) |
| '1. 4911 (Section) | − | (a)(11--- (Subsection) | of the 18 PA CS. (PA Statute) | _ I (counts) |
| 4911_ (Section) | | La~2 | of the _ 18 PA CS. _____ (PA Statute) | 1 (counts) _ |
| 90314911 _ | (Subsection) | of the 18 PA CS. | 1 (counts) |

*'q03/ gi07* (sXO)(a)(C            lg.VIN-C.S                    ¡ tooNTJC._&·

**POLICE CRIMINAL**
**COMPLAINT**

Defendant's Name: **MARK**

Docket Number:                                                    PAGE FOUR OF FOUR

3.    I ask that a warrant of arrest or a summons be issued and that the defendant be required to answer the charges I
have made. **(In order for a warrant of arrest to issue, the attached affidavit of probable cause must be completed and sworn to before the issuing authority.)**

4.    1 verify" that the facts set forth in this complaint are true and correct to the best of my knowledge or information and

_____ 200                    (Signature of Affiant)

AND NOW on this date                                    2                        een oreror a warrant to issue.

(Magisterial District)                                                            SEAL

APPENDAGE "A"

**COMMONWEALTH OF PENNSYLVANIA V. DANIEL STRONG, JULIE GREHL**
**(alkla Julie Strong), CHRIS STRONG,**
**DAVID BAGNONI and MARK SANDERS**

**CRIMINAL COMPLAINT NO.** E1 - (7c&536 _____

**AFFIDAVIT OF PROBABLE CAUSE**
**IN SUPPORT OF CRIMINAL COMPLAINT**

Trooper Jay McKee, being duly sworn according to law, deposes and says:

Your Affiant is employed by the Pennsylvania State Police and currently assigned to the Criminal Investigation Unit, Troop "E" Barracks, Erie Pennsylvania. As such, your affiant, has been conducting a criminal investigation into violations of the Pennsylvania Crimes Code in and around Erie County.

Your Affiant alleges that the evidentiary results of this investigation and the investigative efforts of the Seventeenth Statewide Investigating Grand **Jury** demonstrate that the aforementioned crimes were committed by Daniel Strong, Julie Grehl (a/k/a Julie Strong), Chris Strong, David Bagnoni and Mark Sanders.

Your Affiant has reviewed the Seventeenth Statewide Investigating Grand **Jury** Presentment No. 39 (a copy of which is attached hereto and incorporated herein by reference) and I find that the factual findings described therein correspond with the results of your Affiant's own investigative findings. I have reviewed the sworn testimony given by the witnesses referred to in Presentment No. 39, subject to the penalties of perjury and false swearing.

Your Affiant avers that testimony of these and other persons who appeared before the Seventeenth Statewide Investigating Grand Jury is consistent with the information contained within the Presentment No. 39 and is also reflected in the instant criminal charges.

Furthermore, Presentment No. 39 shows on its face that it is based upon evidence which the Seventeenth Statewide Investigating Grand **Jury** reviewed and evaluated which includes sworn testimony of witnesses appearing. Your Affiant has reviewed the evidence presented before the Seventeenth Statewide Investigating Grand **Jury** and finds that it comports with the results of his investigative efforts and findings as to allegations contained in this instant criminal complaint.

## INTRODUCTION

We, the members of the Seventeenth Statewide Investigating Grand Jury, having received evidence pertaining to allegations regarding violations of the Crimes Code and Motor Vehicle Code, occurring in and around Erie County, Pennsylvania, pursuant to Notice of Submission of Investigation No. 6, do hereby make the following findings of fact and recommendation of charges.

## FINDINGS OF FACT

**Motor Vehicle Code Definitions and Provisions**

Trooper Peter Harvey, a vehicle fraud investigator for the Pennsylvania State Police, testified before the Grand Jury on April 11, 2001. His primary responsibilities are to conduct audits and provide authorization for numerous businesses which deal in motor vehicles, including salvage yards. Trooper Harvey provided an overview of the law governing the abandoned vehicle process. Trooper Harvey defined a "salvor," as ' a person engaged in the business of acquiring abandoned vehicles for various purposes, including junking them, selling their parts or rebuilding and reselling the entire vehicle. This definition is in Chapter 253 of the Motor Vehicle Code, which also sets out procedures for salvors. PennDOT's regulations governing motor vehicle businesses are found in Title .67 of the Pennsylvania Code.

Trooper Harvey testified that the Motor Vehicle Code authorizes a police officer to take any vehicle found on a highway that meets the statutory definition of an "abandoned" vehicle to a tow truck operator or nearby garage. For a vehicle to be considered "abandoned," certain criteria must be met. If a vehicle has been left on public property or a roadway for more than 48 hours, the Motor Vehicle Code requires the police to notify the last registered owner by certified mail that unless the vehicle is moved to a suitable location within seven days of the date that the notice was mailed, the vehicle will be removed as abandoned. Trooper Harvey testified that the police can easily determine

ownership of a vehicle by checking the vehicle identification number ("VIN") and/or the registration plates. The VIN is found on several places on each motor vehicle, including the dash, and essentially serves as the fingerprint of the vehicle.

Trooper Harvey testified that the Motor Vehicle Code also allows a police officer to authorize the removal of motor vehicles from public roadways if the vehicle poses a safety hazard and/or impedes the flow of traffic. The Motor Vehicle Code also allows the police to remove a vehicle for other reasons, such as if the vehicle is evidence in a crime or if the vehicle has been involved in an accident. Trooper Harvey testified that vehicles removed under these conditions are not considered "abandoned," as that term is defined in the Motor Vehicle Code and are not to be disposed of as such.

If after all required notice has been given and the owner of an abandoned vehicle does not respond, the police may direct a salvor, in writing, to remove the vehicle from its location to a secure area designated by the department for storage of abandoned vehicles. To initiate this process, police are required to fill out an MV-952. A copy of the MV-952 must be given to the salvor and accompany the vehicle. The police department is required to be keep a copy for three years. This form is required to be submitted by the salvor to PennDOT within 48 hours.

Section A of the MV-952 form contains all of the vehicle information such as make, model, year, body type, color, VIN, title number, registration, state and odometer reading. The officer is also required to record the name and address of the police department as well as the "police control number," a number assigned to all police cases and used to link the form to an action of a specific officer. The location of the vehicle and its value must also be indicated on the form.

After receiving the submitted MV-952, PennDOT is required to send another notice to the vehicle's last registered owner, advising of the location of the vehicle and giving notice that it must be reclaimed at that location. A copy of this notice is also sent to the salvor.

When a salvor receives an abandoned vehicle, the salvor is required to remove the license plate and the inspection sticker and forward the license plate to PennDOT immediately.

Trooper Harvey testified that a vehicle may be classified "valueless except for junk" whenever the cost of repairs to the vehicle would exceed the value of the vehicle once repaired. In those situations, the abandonment process becomes streamlined and PennDOT will issue a certificate of salvage to the salvor immediately. In contrast, the process for vehicles which have "value," as defined in Chapter 73 of the Motor Vehicle Code, is different. In those cases, every effort must be made to attempt to contact the last registered owner/lienholder of the vehicle. In cases where the owner/lienholder is not known, the salvor is required to place an ad in a newspaper circulated in the area where the vehicle was found, before obtaining a title for the vehicle. This ad must contain identifying information regarding the vehicle so that the last registered owner may claim the vehicle.

In the event the vehicle is still not claimed, the salvor is required to place an ad for an auction and list those vehicles to be auctioned. In the event the vehicle is not sold at auction, PennDOT would then issue title to the salvor. Proceeds from the sale of a vehicle with "value" are used to satisfy the salvor's costs. Left over proceeds are remitted to the last registered owner/lienholder, or forwarded to the Commonwealth's Vehicle Recovery Fund if the owner or lien holder cannot be found.

**Erie Police Department Policy and Practice**

Trooper Jay McKee testified before the Grand Jury on July 18, 2001, and reviewed the testimony of Deputy Chief Steven Kovacs given September 21, 2000, before the Fourteenth Statewide Investigating Grand Jury. A copy of the transcript of Deputy Chief Kovacs' testimony was admitted in its entirety before this Grand Jury. Deputy Chief Kovacs testified that since 1990 he had been a deputy chief for the Erie Police Department. Deputy Chief Kovacs testified that in the late 1980s the city of Erie began experiencing problems with its towers/salvors. As a result, Deputy Chief Kovacs was assigned to conduct a study of the towing process in Erie. Deputy Chief Kovacs testified that at that time Erie had no regulations governing the salvors/towers under contract with the city. As a result of his study, a manual was created which contained regulations which were to govern the salvors/towers under contract with the city and which set forth the city's policies and procedures for towing vehicles. A copy of this manual (Manual 500-2) was marked as an exhibit and admitted into evidence.

Deputy Chief Kovacs testified that all police officers received a copy of the manual as did salvors under contract. Deputy Chief Kovacs testified that as a result of the regulations' stringent requirements regarding documentation and facilities only two salvors submitted bids for city contracts. Those two salvors were West End Auto and Bizzarro's. These two salvors were the only salvors the city was using prior to the effective date of Manual 500-2.

Deputy Chief Kovacs testified that as a result of the study, the position of Service Operation Sergeant was created. One of the responsibilities of the Service Operation Sergeant was to train all Erie Police Department officers and all new hires regarding the new towing regulations. Jerome Bednaro was the first Service Operation Sergeant under the new policy.

According to Deputy Chief Kovacs, the manual required that for all police initiated tows, with the exception of abandoned vehicles, police officers were mandated to notify the last registered owner and/or lienholder within 48 hours of the tow that their vehicle had been towed to a particular location and how it could be retrieved. Deputy Chief Kovacs testified that the abandoned vehicle process was different. An officer coming upon an apparently abandoned vehicle was required to place a tag on the vehicle alerting the owner that the vehicle must be moved within 48 hours. If the vehicle was not moved within this time period, the depai went was required to send a registered letter to the last registered owner advising that they had five to seven days to move the vehicle. If there was no response, the service operation sergeant was then required to fill out form MV-952 which would initiate the abandoned vehicle process at PennDOT. Once the MV-952 was filled out, the officer was required to contact a salvor to tow the vehicle. According to departmental policy, once an officer has tagged the vehicle, it was that officer's responsibility to alert the service operation sergeant of a potentially abandoned vehicle. The officer did this by placing a tear- away portion of the tag in the service operation sergeant's mail box.

Deputy Chief Kovacs testified that beginning in 1989 departmental policy required all officers who initiated a tow (with the exception of tows resulting from an accident) to fill out a multi-copy form referred to as a tow ticket, which contained a very detailed description of the vehicle being towed. The top copy of the ticket was attached to a report generated by the officer. The second, yellow copy is given to the tow truck driver. The manilla and pink copies are provided to the officer in charge of the shift who, in turn, gives them to the computer clerk responsible for running the registration on the vehicle to determine who the owner is and whether the vehicle is stolen. The pink copy of the form acts as a release form if the owner claims the vehicle. The

information on the tow ticket was also placed into the department's computer system so as to create a record of every vehicle which the department was responsible for having towed.

      According to Deputy Chief Kovacs, if the owner was not at the scene when the vehicle was towed, the computer clerk is required to send a registered letter to the owner advising that the police had the vehicle towed and advising of the location where the vehicle could be found. If an owner responds to the notice, only the officer in charge is authorized to release the vehicle to that owner. The release of the vehicle is recorded on the form. The pink copy is provided to the owner so that he may bring the same to the tow company where the vehicle is located. When the owner retrieves their vehicle, the tow operator is required to fill out on the form the amount charged. The owner is required to sign the form acknowledging receipt of their vehicle. The tow operator is then required to return the pink copy to the service operation sergeant at the Erie Police Department.

      Deputy Chief Kovacs testified that Section 527.04 of Erie's ordinances established authorized fees for each police initiated tow. The salvor is permitted to charge $60.00 for a passenger car and $65.00 for trucks. The contract allows salvors to charge $5.00 per day storage fees for police generated tows. According to the contract, the salvor is to remit $20.00 to the city when the owner picks up his car. Deputy Chief Kovacs testified that the tow ticket procedure is one way in which the City is notified that they can collect $20.00 from the tower.

      Deputy Chief Kovacs testified that an incident in October 1998 made him aware that Officer Mark Sanders had signed an MV-952 at West End Auto. At the time, the service operation sergeant, Charles Caskey, was on a leave of absence and Officer Eric Erdley was his replacement. Deputy Chief Kovacs testified that he became aware of the incident when Police Captain David van Buskirk

told him that the towers claimed that PennDOT had told them it was permissible for police officers to go to the salvors lot and sign MV-952s declaring vehicles on their property to be abandoned.

Deputy Chief Kovacs testified that he advised Captain van Buskirk that the department would not send officers out to the lot to *sign* those forms and directed van Buskirk to draft an order prohibiting officers from signing MV-952s unless designated by the Chief of Police. Deputy Chief Kovacs testified that order, dated October 23, 1998, was given to all officers and copies were sent to both West End Auto and Bizzarro's. The order indicated that it was in effect pending "investigation," which Deputy Chief Kovacs testified referred to an investigation into whether or not there was a change of PennDOT policy relating to abandoned vehicles. Deputy Chief Kovacs directed van Buskirk to call PennDOT. Deputy Chief Kovacs testified that van Buskirk advised him that PennDOT's position was that officers could not sign MV-952 forms for vehicles which were already on salvors' lots.

Trooper McKee summarized the testimony of David van Buskirk given October 26, 2000, before the Fourteenth Statewide Investigating Grand Jury. A copy of the transcript of Captain David van Buskirk's testimony was admitted in its entirety before this grand *jury* for its consideration and review.

Captain van Buskirk testified that he had been employed as a police officer for 32 years and that he had been the service operation sergeant from February 1994 through February 1996.Van Buskirk testified that he taught himself the abandoned vehicle process by reading the Motor Vehicle Code. It was van Buskirk's understanding that the MV-952 process was a duty assigned to the service operation sergeant and that it was a violation of departmental policy for any other officer to complete the process.

Van Buskirk testified that around October of 1998 he became aware that off duty police officers, specifically Mark Sanders and Bob Mucha, were signing MV 952s after vehicles had been towed to lots at West End Auto and Bizzarro's. Van Buskirk asked Mucha about what was taking place. According to van Buskirk, Mucha told him he wasn't aware of any rule against going to a lot and signing MV-952s. Mucha said the tow companies had a backlog of vehicles they could not get rid of and that he was merely assisting them in getting rid of those vehicles. Mucha advised van Buskirk that Mark Sanders was doing the same at West End Auto.

Van Buskirk talked to Dan Strong about Sanders signing MV-952s at West End Auto. According to van Buskirk, Strong advised him that he understood that it was a departmental policy that the service operation sergeant would not come to the lot to sign the MV-952s. Strong advised van Buskirk that he had a backlog of vehicles on his lot and that he had no room for them. Therefore, he had Sanders sign the MV-952s as a personal favor because they were close friends.

Contrary to Deputy Chief Kovacs testimony, Captain van Buskirk denied talking to anyone at PennDOT about whether it was permissible for officers to initiate the abandoned vehicle process by declaring vehicles abandoned at the lots where they had already been towed. Van Buskirk testified that the fact that officers were signing MV-952s at the lot was not a well known practice, however, it had been going on for awhile. Van Buskirk told the grand jury that he advised Dan Strong at West End and the owner of Bizzarro's Towing that it was not proper for police officers to go to the lot and sign MV-952s. Van Buskirk testified that he told both owners this following issuance of the October 23, 1998 order. In addition, van Buskirk testified he told Sanders that he was not permitted to sign MV-952s at West End Auto.

Trooper McKee summarized the testimony of Sergeant Charles Caskey who testified before the Fourteenth Statewide Investigating Grand Jury on September 21, 2000. A copy of the transcript of Sergeant Caskey's testimony was admitted in its entirety before this grand jury. Sergeant Caskey testified that he served as the service operation sergeant from November 20, 1996 upto the time of his testimony. According to Caskey, he trained under Captain van Buskirk. Sergeant Caskey described the Erie Police Department's abandoned vehicle process, which tracked the process as described in the testimony of Deputy Chief Kovacs. Sergeant Caskey testified that he never authorized anyone else to sign MV-952s with the exception of Officer Pat Durkin who covered for Caskey when Caskey was on vacation. Sergeant Caskey testified that he was off work from October 22, 1998 through August 12, 1999 because of illness. When he returned to duty, Sergeant Caskey testified that he became aware that other officers had been signing MV-952s when he received three rejected MV-952 forms from PennDOT sometime in September or October 1999. According to Sergeant Caskey, the forms indicated the vehicles had been towed more than 48 hours before forms were signed declaring the vehicles abandoned. In addition, David Bagnoni, a former Erie Police officer and then chief of the Erie airport police, had signed the MV-952 forms. The words "Erie Police Department" were rubber stamped on the forms, indicating it was the police agency authorizing the vehicle to be declared abandoned. Bagnoni was not then employed by the Erie Police Department. Moreover, Caskey testified that he had never authorized Bagnoni to sign MV-952s on his or the department's behalf.

Trooper McKee testified on August 15, 2001, that he interviewed David Bagnoni who told him

that he became involved in signing MV-952s for West End at the request of Dan Strong. Strong asked him

to help out because vehicles were backing up on his lot because the Erie Police

Department had issued its October 1998 order prohibiting its officers from going to the lots and signing the forms. Bagnoni admitted that he would just go to West End and sign blank forms, sometimes signing the form "Chief David Bagnoni" and recording his badge number on the MV952.

Trooper McKee asked Bagnoni why he signed forms which had been stamped "Erie Police Department" and gave the impression that he was the Chief of the Erie Police Department. Bagnoni responded that he just signed blank forms and that he did not know what West End Personnel did with the forms after he signed them. Contrary to this assertion, Trooper McKee testified that 952's seized during the search of West End Auto revealed that Bagnoni signed 952's which already had "Erie Police Department" stamped upon them.

Trooper McKee testified on September 9, 2002, that he had interviewed Erie Police Officer Mark Sanders. Sanders admitted that he had given Dan Strong and West End Auto personnel power of attorney to sign his name on MV-952s in his absence. Sanders said he did this because of the vast amount of MV-952s which needed to be signed at West End Auto. Sanders stated that he "trusted" Strong.

Sergeant Caskey testified that he brought the returned MV-952s to the attention of Deputy Chief Kovacs who suggested that they bring it to the attention of the chief. Sergeant Caskey testified that following this meeting it was his intention to bring the returned MV-952s to the attention of the Pennsylvania State Police.

Sergeant Caskey testified that shortly after he returned to work in August of 1999, Darlene from West End Auto called him and requested that he come to the lot to verify some VINs on various vehicles. Sergeant Caskey was confused by this request, and Darlene asked him to come

down to the lot so that she could explain it to him. When Caskey went to the lot, he was handed an envelope containing MV-952s. Caskey testified that he told the tow driver who was accompanying him that he could not sign those forms at the lot. He gave the forms back to Darlene and refused to sign them.

Jerome Bednaro testified before the Grand Jury on September 27, 2001. Bednaro testified that he retired in March of 1994 after 30 years at the Erie Police Department. Bednaro testified that he retired as a service operation sergeant and that he had served in that capacity for approximately five years. Bednaro confirmed that he was the first service operation sergeant following the study conducted by Deputy Chief Kovacs. Bednaro testified that among his duties was enforcing towing regulations and conducting the abandoned vehicle process within the department.

Bednaro testified that the city had experienced problems with tow companies in the past because they were not accountable to anyone and the city had no set policy regarding abandoned vehicles. Bednaro confirmed that changes were made in late 1989. Bednaro testified that it was his understanding that vehicles could not be declared abandoned at the tow lots. He testified he had no knowledge of police officers going to the individual salvage lots to sign MV-952s.

In 1995, after Bednaro left the department, a patrol officer within the department told him that police officer Robert Mucha was signing MV-952 forms at the Bizarro lot and that police officer Robert Kline was doing the same at West End Auto. Each were allegedly receiving $25.00 for each MV-952 they signed. Bednaro could not recall the officer who gave him this information, but did recall he told the officer he should give that information to others within the department. However, the officer informed Bednaro that he did not want to get involved.

Bednaro testified that following the study by Deputy Chief Kovacs, it became his responsibility to conduct training for all civilians and police officers regarding the towing procedures and policies implemented in the new manual, including the abandoned vehicle procedure. Bednaro confirmed that David Bagnoni was an Erie city police officer at that time and would have been obligated to attend the classes.

Bednaro testified that it was his understanding that if the salvors had vehicles on the lot that they wished to get rid of, the salvors were obligated to go to county court and get a court order enabling them to do so. Bednaro believed the salvors wanted to take a short cut and did not want to pay the attorney's fees associated with going to court. Bednaro recalled that West End Auto and Bizzarro's Towing had wanted him to come to their lots to sign MV-952s. Bednaro testified that he advised them that he could not do that and that they had to go to county court and obtain approval from a judge.

Robert Kline testified before the grand jury on July 18, 2001. Kline was a police officer with the Erie Police Department from May 1974 until January 1999. Kline testified that he was a patrol officer and spent the last 15 years in the motorcycle division. Kline testified that he was never promoted while working for the Erie Police Department. It was Kline's recollection that the department had no set policy concerning towing procedures. Kline testified that this changed in approximately 1990. He stated he was not aware of what prompted the change.

Kline testified that he began signing MV-952 forms in the mid-1970's. Kline recalled that he was asked to help out Clyde Kendall from Kendall Auto Parts. According to Kline, Kendall had 500 to 1,000 vehicles on his property that he could not get rid of. According to Kline, Kendall had gone to the Pennsylvania State Police as well as the Erie Police Department, but neither department would

assist him in running VINs for the vehicles he had on his lot. Kendall asked Kline for help because the MV-952 required a police officer's signature verifying the VIN and condition of the vehicle. Kline testified that it was sometime later that he became aware that a police officer was required to initiate the process.

Kline testified that he was a friend of Kendall's and decided to help him in spite of the fact that the Erie Police Department would not do so. Kline testified that he went to a supervisor, Guy Mattocks, about Kendall's request. According to Kline, Mattocks told him to take care of it on the side since Kendall was Kline's "buddy".

Kline testified that he began signing MV-952s for Dan Strong at West End Auto in the late 1980s and continued doing so until approximately 1996 or 1997. Kline had been a personal friend of Dan Strong since the 1980s and he and Strong socialized together. Kline testified that when he received the form the vehicle's VIN was filled in. Kline testified that it was his responsibility to look at the vehicle, confirm that the vehicle matched the picture which was attached to the form, and verify that the VIN on the form matched the VIN on the car. Kline testified that he would then sign as police officer, and put his badge number and department on the form. Kline testified that many of the forms that he signed already had the valuation information checked on the form. Kline testified that only on very rare occasions would he alter the valuation.

Kline testified that he made no effort to notify the owners of the vehicles. In addition, he made no effort to verify the owner information already on the MV-952 when he arrived at the lot. Kline testified that he put his trust in Strong and that it was his responsibility to merely verify the VIN information on the MV-952. He made no attempts to call the department to verify the owner information. If the form indicated "no record found," he made no effort to verify that fact. Kline

testified that he made no attempt to confirm that owners had ever been notified by the salvors or the police department that their vehicles were at West End. In fact, Kline madeno effort to determine under what circumstances the vehicle was at the lot. Kline confirmed that it was possible he could have signed MV-952s for vehicles that were placed on the lot following an accident or for vehicles about which the owner and Dan Strong may have been in dispute. Kline told the grand jury he never received money or any consideration for signing MV-952s for Strong.

Kline testified that he quit signing MV-952s for West End following an interview he had with Chief DeDionisio, Deputy Chief Dennis Tobin and Captain David van Buskirk for a position as a sergeant. Kline recalled that during the interview, he advised those present that he had been signing MV-952s at West End Auto. According to Kline, Chief DeDionisio acted surprised and seemed "taken aback." Kline recalled that the Chief asked him what he was getting for signing the MV-952s. Following that interview, Kline testified that he was not promoted and that because of the Chief's reaction during the interview he refused to continue to sign MV-952s at West End. Kline testified that he told Strong to make the Erie Police Department formally send an tpfficer to his lot to sign the forms.

Kline testified that Mark Sanders, an Erie police officer, began signing MV-952s for Dan Strong after Kline quit doing so. Kline testified that Sanders was very good friends with Strong. Kline further testified that he became aware that David Bagnoni began signing the MV-952s for Strong after Kline retired. Kline confirmed that he had known Bagnoni for approximately 25 years and that Bagnoni was good friends with Dan Strong. Bagnoni told Kline that he started signing the forms to help Strong because nobody else would sign them. Kline testified that he asked Strong

whether Bagnoni and/or Sanders had been signing blank MV-952s. Strong admitted to Kline that MV-952 forms were "unfortunately" signed blank on many occasions.

Kline testified that salvors were required to dispose of the vehicles that the city had ordered towed. Kline reiterated that the Erie Police Department was not willing to send any officers to the lots and was not willing to run ownership information for the salvors. Kline testified that it was his belief that the city and/or state was responsible to provide the salvors with the information so that the salvors could get rid of the vehicles. Kline admitted that some department clerks would give the salvors ownership information when they requested it.

Robert Mucha testified before the grand jury on July 18, 2001. At that time Mucha was working part time at Bizzarro's Towing and was responsible for inventory control. Mucha testified that he retired as a lieutenant from the Erie Police Department in November 1997 after 27 years, and began working for Bizzarro's approximately one year after that. He had become familiar with Bizzarro's while doing accident investigations as a police officer. Mucha testified that while he was a police officer Bizzarro's requested him to sign MV-952s at the lot because whoever had been signing them at the lot wasn't doing so anymore. Mucha admitted that he had signed MV-952s at Bizzarro's until he quit the practice in approximately 1995. Mucha testified that Deputy Chief Mattocks and Captain van Buskirk were aware that he was signing MV-952 at the lot. Mucha recounted a conversation with Captain van Buskirk which arose because Bizzarro's complained to Mucha about the number of vehicles piling up on their lot. Mucha testified that he signed MV-952s for vehicles left on Bizzarro's lot, both city tows and private property tows.

Mucha admitted that the vehicle's last registered owner or lien holder may not have been contacted in every case, but Mucha said that he went to every effort to verify the information on the

MV-952, by such means as checking the VIN. Mucha testified that if the MV-952 indicated "no record found" for the last registered owner he would double-check the information. Mucha explained that he did this to ensure that the vehicle was not stolen. Mucha testified that the MV952s were already filled out when he arrived at the lot. Mucha testified that he viewed his job as verifying the VIN and verifying that the vehicle to which the MV-952 applied was, in fact, the vehicle being declared abandoned.

**Eric** Erdley testified before the grand **jury** on July 18, 2001. Erdley began his employment at the

Erie Police Department in July 1992. After Erdley graduated from the police academy, he went through

approximately a three week period of instruction conducted by officers within the department. This

training included instruction in the department's towing policy.

Erdley confirmed that the department had been using tow tickets since his hiring in July 1992 and

detailed their use in terms consistent with the testimony of Deputy Chief Kovacs. Erdley explained that

every time an officer directed a vehicle to be towed by one of the city's two contracted services the officer

was required to fill out a "tow ticket." The completed "tow ticket" was turned in to a street sergeant who

checked it and sent it to the officer in charge. The multi-part form was then split. One copy went to the

scope operator who runs the VIN information and enters information from the form onto the police tow

log. The pink copy of the form was retained as the release form when the owner retrieves the vehicle. The

original went to document storage. Information from the tow ticket was entered into the department's

computer system.

Erdley testified that he filled in for Sergeant Caskey when Caskey went on leave in October

1998. Erdley testified that he learned the abandoned vehicle process by reading the department's

tow manual and the salvors manual. He also spoke with Captain van Buskirk because van Buskirk

had previously been the service operation sergeant.

According to Erdley, van Buskirk told him that the salvors would accumulate vehicles from private property tows as well as from police-ordered tows on their lots. Van Buskirk told Erdley that he was to contact the salvors every few weeks and go to the lots where the MV-952s would have been started by the salvors. Van Buskirk explained to Erdley that his job was to verify the information on the MV-952; specifically, to make sure that the VIN on the vehicle matched the VIN listed on the MV-952, to ensure that the photos attached to the MV-952s were photos of the actual vehicle and showed the relevant damage, and to verify the valuation placed on the vehicle.

Erdley testified that he performed this duty for both West End and Bizzarro's. Erdley testified that

he made no efforts to determine the reason a vehicle was at the lot; that is, whether the vehicle had been

towed on police order or whether it was a privately initiated tow. Erdley said that he did not fill out a tow

ticket which would have ensured that the Erie Police Department sent a notice to the last registered

owner/lien holder that the vehicle was being declaring abandoned.

Erdley testified that a majority of the MV-952s provided by West End Auto and approximately 50

per cent of the MV-952s provided by Bizarro's indicated "no record found" on that portion of the form

which asked the identity of the last registered owner. Erdley admitted that he made no attempts to

determine the last registered owners for those MV-952s which he signed, including those on which the

salvors had indicated "no record found" for the last registered owner.

Erdley testified that on several occasions while at West End Auto he had to correct the

valuation which appeared on the MV-952 and then required West End Auto to initiate a new MV-

952 to reflect the correct value. Erdley testified that on each occasion he made West End Auto raise the value of the vehicle from the value which West End Auto personnel had initially recorded.

Anthony Talarico testified before the Grand Jury on July 18, 2001. Talarico testified that he had been an Erie Police Officer for six years and that he currently is a patrol officer and a member of the department's SWAT team. Talarico testified that he is engaged to Jenny Bizzarro (an owner/employee of Bizzarro's Towing) and that he worked at Bizzarro's before becoming a police officer.

Talarico testified that he approached Mucha and requested him to help perform "salvage" at Bizzarro's. "Salvage" was a term that Talarico used to describe the signing of MV-952s at the lot. Talarico testified that Mucha instructed him how to perform the procedure at the lot. Talarico testified that the vehicles would have to sit on the lot for at least 30 days before the MV-952 was filled out. Tararico testified that he was instructed that it was his responsibility to go to the lot, verify the make, model, year, and VIN of the vehicles for which he was to sign MV-952s, and attempt to get the mileage reading from the vehicle. Talarico was also to get an overview of the car, check for damages, and note them on the form. Talarico testified that he performed this function off duty and that he did this approximately half a dozen times for Bizzarro's Towing. Talarico denied signing MV-952s for West End Auto.

Talarico testified that he did not fill out a tow ticket when he performed "salvage" at the lot. Talarico admitted that notice might not have been sent to the owners of the vehicles. This was especially true if the vehicle had been towed for a non-police reason because no tow ticket would have been generated at the time of the initial tow.

**PennDOT Policy and Practice**

Trooper Peter Harvey testified before the Grand **Jury** on June 15, 2001, and summarized the testimony of PennDOT employees Patricia J. Sharp, Monty S. Fronk and Michael R. Smolizer, each of whom. testified before the Fourteenth Statewide Investigating Grand **Jury** in either August or September of 2000. Transcripts of their testimony were submitted in their entirety to the Grand **Jury** for its consideration and review.

According to Trooper Harvey's summary, Smolizer testified that he supervised PennDOT's abandoned vehicle unit for approximately three years, one of several units he supervised. Smolizer testified that he had a general knowledge of the abandoned vehicle process. Smolizer was under the impression that regardless of what the MV-952 form indicated, the abandoned vehicle unit would always check for the last registered owner once the unit received an MV 952 and make every attempt to contact the owner.

According to Smolizer, PennDOT's greatest concern after receiving paperwork was to get the appropriate documents out the door and to the customer in order to be "user friendly" and to have a high productivity rating. Smolizer testified that when an MV-952 form was received it was datestamped which started the clock running on the document. Smolizer testified that the unit had only four employees, but received approximately 800 to 1,000 forms a day.

Smolizer testified that the unit's expert on the abandoned vehicle process was Monty Fronk. Smolizer went directly to Fronk whenever he had a question regarding the process. Following the initiation of the state police criminal investigation into the abandoned vehicle practices of West End Auto, Smolizer was relieved of his duties as supervisor of the abandoned vehicle unit and transferred

to the **cash** room.

Monty S. Fronk worked in the abandoned vehicle unit as a clerk from February 1992 until December 1999. Fronk testified that when he first started in 1992, there were five or six clerks. When he left the unit in December 1999, Fronk was the only clerk in the abandoned vehicle unit. Fronk's primary responsibility was to get the data checked in and then get the appropriate forms out. Fronk indicated that PennDOT relied upon the police officer's signature on the form, and that as a

result, the unit did not do much checking and/or verifying of information recorded on the MV-952 form. According to Fronk, it was PennDOT's policy to allow police officers to declare vehicles abandoned on the salvors' lots because salvors' lots were getting filled up with vehicles. Fronk indicated that this was not a written PennDOT policy, but merely an implied policy. Fronk testified that there was no formal PennDOT policy during his seven plus years in the abandoned vehicle unit.

Fronk said he had no formal training or education regarding the abandoned vehicle process, but learned on the job and through various publications available in the department, such as the Motor Vehicle Code and fact sheets. Whenever Fronk had a question, he researched the issue

himself.

Patricia J. Sharp testified that she was a Clerk III work leader and had been employed by PennDOT for 16 years. She testified that she received no formal training regarding the abandoned vehicle process except from Monty Fronk. Sharp transferred into the abandoned vehicle unit in approximately January 2000 and took Fronk's position within the unit. Prior to that transfer, Sharp testified that she worked a few desks away and realized how inundated the abandoned vehicle unit was with paperwork. According to Sharp, the unit had only two employees and the unit had to process more than 1,200 MV-952 forms a day (approximately 1,000 forms were received from Philadelphia alone each day).

Sharp testified that Tina Lee became her supervisor approximately two months before Sharp's September 2000 testimony. The supervisor above Lee was Susan Wilson who managed the abandoned vehicle unit along with several other units.

Sharp testified that once she was transferred into the unit she began noticing that PennDOT procedures concerning the process did not comply with what was stated in the Motor Vehicle Code. Specifically, Sharp noticed that vehicles with value appeared to be undervalued on the forms. She noticed that vehicles were being given directly to the salvors rather than being held for auction as required by statute or before a lien holder or owner could claim them. Sharp observed that forms were coming in with no information on the vehicle's VIN.

Sharp testified that she brought these observations to the attention of Susan Wilson. After repeated complaints to Wilson with no change in policy, Sharp accumulated boxes of MV-952s as examples of the problems she was observing and presented them to Wilson. As a result, Wilson permitted Sharp to begin rejecting the forms whereas, according to Sharp, PennDOT never really had rejected the forms before. Sharp testified that she went to Wilson because she was concerned she would have to put her name on the paperwork and she didn't want the personal liability of filling out forms which contained inconsistent and/or inaccurate information. According to Sharp, prior to her coming into the unit, PennDOT would reject only those MV-952s for vehicles found to have

been stolen in Pennsylvania. Any other discrepancies on the form would not cause the form to be rejected. Once Sharp began rejecting forms, she began receiving calls from salvors complaining that they never before had forms rejected and questioning why they were being rejected now. Sharp testified that she recalled one or two conversations with representatives of West End Auto who were calling to complain they had not received the salvor letter.

Sharp testified that the MV-952 had four sections. A police officer was required to complete Section A of the MV-952 which included a description of the vehicle, the VIN and description of the damage to the vehicle. Section B of the form was to be signed by private property owners whenever an abandoned vehicle was being removed from their property. Sections C and D were to be filled out and signed by the salvor. Sharp testified that the police were responsible for complying with the notice provisions of the Motor Vehicle Code by notifying the owner of vehicles which they were declaring abandoned.

Sharp explained that the MV-952 form came to her time stamped. She would compare the value as indicated on the form with the photos of the vehicle attached to the form. Sharp then delivered the forms to another employee who was responsible for looking up title numbers and separating forms without VINs. That employee then entered information into the computer. According to Sharp, this computer entry would then generate a notice to the last-registered owner as well as to the salvor.

Sharp testified when she came to the unit she became aware of the problem of vehicles being declared abandoned at the salvor's lots. Sharp admitted that according to the Motor Vehicle Code and PennDOT regulations in order for a private property owner to declare vehicles abandoned the vehicle must be valueless except for junk. Sharp testified that the policy of the unit, despite regulations to the contrary, was that any vehicle could be declared abandoned on the salvor's lots, no matter whether the vehicle had value or not.

Sharp testified that PennDOT has a rejection slip to be used if an MV-952 had been filled out improperly. One reason allowing rejection of a MV-952 form would be if the tow date for a vehicle was more than 48 hours prior to the police officer's completion of the form. Sharp testified

that prior to her going to Wilson and getting permission to reject MV-952s, forms were being processed regardless of whether the tow date was before or within 48 hours of the vehicle being declared abandoned by a police officer. Sharp stated that such a practice is in violation of section 253.4 of Pennsylvania Code, Title 67. Only after she was permitted to reject the MV-952s did Sharp

begin requiring the salvors to sign Section B of the form.

According to Sharp, however, it was PennDOT's policy, in fact, to merely require the salvor to sign the MV-952 on Section B as a private property owner as the vehicle was on their property and was being declared abandoned at that location.

**West End Auto/Dan Strong Policy, Practice and Transactions**

Trooper McKee testified before the Grand Jury on January 14, 2002. Trooper McKee described to the Grand Jury an incident involving James Auburn. Auburn had testified before the Fourteenth Statewide Investigating Grand Jury on February 12, 2001, and a transcript of his testimony was entered into evidence before this Grand Jury. Auburn was the owner of a 1992 Honda Accord. Auburn reported his vehicle stolen and his vehicle was later recovered by the Erie Police Department after it had been abandoned after an accident. The Accord was towed to West End Auto. Auburn was a friend of Chris Strong, Dan Strong's son, and spoke with Chris at West End Auto following the accident. Auburn advised both Strongs that he wanted an estimate and that he wanted West End Auto to repair his vehicle.

The accident involving Allburn's Accord occurred on December 1, 1996. An MV-952 for the Accord was prepared and signed by Erie Police Officer Mark Sanders on February 3, 1997. According to records reviewed by Trooper McKee, the Accord was sold on April 10, 1997, to an

individual named Mabins for $2,500.00. However, the MV-952 listed the Accord as valueless except for junk, meaning its value was less than $250.00.

Trooper McKee testified that he interviewed Mabins. Mabins told Trooper McKee that he was in the practice of walking through junk yards, checking out cars and buying those that he liked, fixing them up and then re-selling the vehicles. According to Mabins, he inquired about the Accord when he came upon it at Dan Strong's lot. Mabins said he was told that he could not have the vehicle then but that if he waited a while longer, he could have it. After a period of time, Mabins recontacted West End Auto and purchased the vehicle. Mabins advised Trooper McKee that he paid Strong/West End Auto $2,500.00 for the car.

Trooper McKee testified about an incident involving Greg and Don Cooley and West End Auto. The Cooleys purchased vehicles that had been involved in accidents, fixed them up and resold them. The Cooleys purchased a 1993 Cadillac Eldorado in November 1997 in Ohio. In January 1998, Greg Cooley made arrangements to have the Cadillac towed to West End Auto to be repaired.

Greg Cooley testified before the Fourteenth Statewide Investigating Grand **Jury** on February 12, 2001, and a transcript of his testimony was entered before this Grand **Jury** on August 15, 2001. According to Greg Cooley, he dealt directly with Dan Strong concerning the Cadillac. After a period of time, a disagreement arose between Cooley and Strong over repairs involving the Cadillac.

A MV-952 for the 1993 Cadillac Eldorado was completed in July 1998 and signed by Officer Mark Sanders. Despite the fact that Strong and the Cooleys were involved in a repair dispute, the MV-952 indicated "no record found" for the last registered owner. Furthermore, even though the MV-952 was completed in July of 1998, West End Auto accepted a check for $3,174.50 from Cooley on January 3, 1999, for work done up to then. According to Cooley, the check represented a

partial payment for repairs and he did not know at that time that Strong was attempting to obtain a

salvage title for the Cadillac.

Strong subsequently obtained the salvage title for the Cadillac and sold the vehicle to David

Damore for $3,000.00. This transaction occurred in August of 1999.

Trooper McKee also described for the Grand Jury an incident involving James Crissman and West End Auto. Crissman testified before the Fourteenth Statewide Investigating Grand Jury on February 12, 2001 and a transcript of his testimony was introduced into evidence before this Grand Jury on August 15, 2001. Crissman testified that his 1989 Chevy Celebrity station wagon was booted while parked in his mother-in-law's driveway and subsequently towed away on September 23, 1999. Crissman contacted West End Auto about obtaining some personal belongings from the vehicle. However, West End personnel refused to allow him access to his station wagon unless he paid money toward his tow and storage fees. Crissman turned to the Erie Police Department and received assistance from Captain Kuhn who intervened on his behalf. As a result, Crissman was able to retrieve his VA papers and other personal belongings from his vehicle.

Trooper McKee testified that an MV-952 for Crissman's 1989 Chevy Celebrity was filled out and

signed by David Bagnoni on January 18, 2000. On the form, the vehicle's value was listed as junk, or less

than $250.00 and the form indicated "no record found" for the last registered owner. This was the case

despite the fact that Crissman had been in contact with both West End Auto and the Erie Police

Department concerning his vehicle.

Trooper McKee testified concerning a 1995 Mitsubishi Eclipse which was owned by Christopher Curry. Curry himself testified before this Grand Jury on June 15, 2001. Curry had loaned the vehicle to his boss' wife who subsequently involved the car in an accident in the city of

Erie. As a result, the vehicle was towed to West End Auto. The next morning Curry proceeded to West End Auto. He agreed to let West End Auto repair the vehicle and West End initially made an attempt to use the woman's insurance to pay for the repairs.

Curry testified that he subsequently had to return to Virginia where he lived. Prior to leaving Erie, Curry gave West End Auto his address and telephone number in Virginia. Curry testified that he had a series of telephone calls with "Dan," the owner of West End Auto, and West End's secretary over a period of approximately five months. At one point, Curry was advised that the car belonged to West End Auto and that Mitsubishi had given West End title to the vehicle. Curry testified that he asked Strong how he had ended up in possession of the vehicle and Strong replied that he had obtained an abandoned vehicle title for it. Strong told Curry that both Curry and Mitsubishi had signed a piece of paper giving the vehicle to Strong.

Curry testified that he spoke with Mitsubishi and that Mitsubishi denied giving either Strong or West End title to the vehicle. Trooper McKee confirmed this fact when he contacted Mitsubishi.

Mary Zurn testified before this Grand Jury on June 13, 2001. Zurn testified that she was an employee of Dan Strong for approximately five months in 1997. During that time she answered phones and assisted in the completion of abandoned vehicle paperwork.

Zurn testified that she purchased the 1995 Mitsubishi Eclipse from Dan Strong after he had received the salvage title for the vehicle. Zurn testified that she sold a Jeep for $10,000.00 and gave the money to Strong to purchase the Mitsubishi.

Zurn testified that she was advised by Dan and/or Julie Strong that the Mitsubishi's owner did not want the vehicle any longer. Zurn was under the impression that the owner of the Mitsubishi was a woman. Zum denied ever speaking to Curry about the vehicle. Zurn recalled that a bank

called at one point during the abandoned vehicle process and that Zurn advised the bank that the last of

the paperwork had been submitted and that title for West End was on its way. Zum testified that both

Dan and Julie Strong knew that the bank had called inquiring about the vehicle, however, they

both indicated that it was "too late" for the bank to do anything.

Trooper McKee described for this Grand **Jury** an incident involving a 1999 Suzuki 750 motorcycle

owned by Edward Darnell. This motorcycle had been involved in a series of accidents and was towed to

West End Auto on June 7, 1999. According to Trooper McKee, two MV-952s were prepared for this 1999

Suzuki motorcycle, one on July 8, 1999 and a second on October 25, 1999. Sergeant Erdley signed the first

MV-952 and David Bagnoni signed the second MV-952.

Erie Consumer Discount was the lien holder on the Suzuki and became involved in this transaction.

Anthony Paone testified before this Grand Jury on June 15, 2001. Paone testified that he was the branch

manager for North West Financial Services in Erie. According to Paone, Erie

Consumer Discount is an affiliate of North West.

According to Paone, Darnell purchased the Suzuki motorcycle on March 31, 1999, and financed

$10,829.00 of the purchase price through Erie Consumer Discount. Paone learned that the motorcycle was

in an accident in May 1999, after receiving a phone call from Darnell. Darnell advised Paone that the

vehicle had been towed to West End Auto Body.

Paone testified that he contacted West End and was advised by West End personnel that they had
no record of the motorcycle being on their lot. As a result, Paone tried to again contact Darnell to
determine where the motorcycle was. Paone testified that he also spoke with a representative of Erie
Insurance who was likewise trying to locate the motorcycle.

Paone finally reached Darnell who insisted that the motorcycle was at West End Auto. Paone testified that he first contacted West End on June 28, 1999 and that he had a second conversation with personnel at West End in July or August 1999. On the second occasion Paone spoke to Chris Strong, Dan Strong's son. During this conversation, Chris Strong advised Paone that they had no record of the 1999 Suzuki motorcycle being on their lot. Paone again contacted West End on October 14, 1999 and spoke again with Chris Strong. During this conversation Chris Strong advised Paone that West End was selling the motorcycle at auction. Paone confronted Strong about this practice. Strong replied that he was merely getting the title through the state for the towing charges. Chris Strong advised Paone that West End was owed $1,800.00 in storage fees. As a result, Paone contacted his company's lawyers and a lawsuit was instituted against West End Auto.

Trooper McKee testified that he interviewed Darnell regarding the incident. Darnell told Trooper McKee that he spoke with Chris Strong after the motorcycle had been towed to West End and that Chris Strong seemed very interested in the motorcycle. According to Darnell, Chris Strong wanted to take possession of the motorcycle and offered to trade another motorcycle for Darnell's. Trooper McKee further testified that both MV-952s which were submitted to PennDOT for the motorcycle indicated "no record found" for the last registered owner, despite the fact that both Darnell and the lien holder, Erie Consumer Discount, through Anthony Paone, had been in contact

with West End concerning the motorcycle.

The Grand Jury also heard testimony concerning a vehicle owned by David Hammons and Andrea Hammons. David Hammons is the father of Andrea Hammons. Both Hammons testified before the Fourteenth Statewide Investigating Grand **Jury** and transcripts of their testimony were entered before this Grand Jury on August 15, 2001. Mr. Hammons gave his daughter a 1989 Hyundai

Sonata to use while attending school in the city of Erie. The Hammons were from Ohio where Mr.

Hammons worked as a parole officer for the Ohio Department of Corrections.

Andrea Hammons had parked the Sonata in front of her house. On December 23, 1999, she returned home from church at approximately 11:00 P.M. or midnight. After she was dropped off by her church van, she started her vehicle to ensure that it would start because it was winter. When she woke up the next morning, she realized her vehicle was gone. As a result, both Andrea Hammons and her father contacted the Erie Police Department and reported what they believed to be a theft of the vehicle.

Trooper McKee reported that while he initially had difficulty getting the reports for the vehicle

from the Erie Police Department he eventually received the theft report. According to the report, the theft

was reported by the Hammons on December 23, 1999, in the morning. The vehicle was entered into NCIC

as stolen on that same date. After making further inquiry with the Erie Police Department, Trooper

McKee subsequently obtained an accident report which revealed that the vehicle had been involved in a

hit and run accident in front of Hammon's house. When the Erie Police Department responded to the

scene, they had the vehicle towed to West End Auto and made no attempt to locate the owner of the

vehicle.

Trooper McKee testified that a MV-952 for the Hammons' vehicle was filled out on January 18,

2000, by David Bagnoni. The form indicated "no record found" for the last registered owner.

Additionally, the vehicle was listed as valueless except for junk, less than $250.00.

Trooper McKee testified that during execution of a search warrant by the Pennsylvania State Police

at West End Auto on March 14, 2000, investigators recovered the Sonata. An Ohio registration plate was

still on the vehicle. When Pennsylvania State Policeran the plate, they learned

the vehicle had been reported stolen by the Erie Police Department. Neither of the Hammons was notified about the status of their vehicle until contacted by the Pennsylvania State Police following recovery of the vehicle in March of 2000.

Trooper McKee testified about an incident involving a 1995 Cadillic Seville owned by Roderick Jones. Jones was in the practice of purchasing damaged vehicles, repairing them, re titling them, and then selling them. The Seville was one such vehicle.

Jones had the Seville towed to West End Auto for repair work. Jones agreed with Dan Strong that the repairs could be done at Strong's leisure. Approximately five months later, Jones went to West End and was advised that the vehicle was being repaired elsewhere. As he was leaving West End, Jones was advised by a West End employee that West End had sold the car because Strong had thought he was a drug dealer.

Trooper McKee testified that Jones had purchased the Cadillac in April of 1998. A MV-952 was signed on August 14, 1998, by Mark Sanders. Despite the fact that Jones had reached an agreement with Strong concerning repair of the Cadillac, the MV-952 indicated "no record found" regarding the last registered owner. Once Strong obtained title, the Cadillac was sold to George Turner, owner of Auto Cycle. Trooper McKee testified that Turner was a good friend of Dan Strong and that Turner had purchased Auto Cycle from Strong, its former owner.

Trooper McKee testified about a 1987 Honda Civic owned by Sophia Marie Knight and which Knight was in the process of selling to Eric Lomax. Lomax testified before this Grand Jury on June 15, 2001. According to Lomax, the vehicle was parked off-street, on a grass strip in front of his residence within the city of Erie. The vehicle had no registration. Lomax was in the process of paying Knight for the vehicle.

Lomax recalled that on the evening of August 20, 1998, he was sitting on his front porch with his children. As he and his children were preparing to enter the residence for the evening, Lomax saw an Erie Police Department cruiser flash its lights. The cruiser was located up the street from Lomax's residence. Lomax proceeded to enter the residence and a few minutes later looked out the window and observed a West End tow truck hooking up his vehicle. Lomax did not go down stairs due to the fact that he had past problems with the police. Lomax called Knight and told her that the police had towed the vehicle.

On August 24, 1998, Knight proceeded to the Erie Police Department and obtained the pink tow slip so she could obtain her vehicle. Knight was not issued any citations or fines as a result of the tow. Knight proceeded to West End Auto where she was advised that she owed a lot of money for the tow and storage fees. Both Knight and Lomax sought help through a local legislator, but to no avail.

Trooper McKee testified that an MV-952 for the 1987 Honda Civic was filled out on September 20, 1998 and signed by Mark Sanders. The MV-952 indicated "no record found" for the last registered owner despite the fact that Knight had been in contact with both the Erie Police Department and West End Auto. Trooper McKee testified that during the search of West End in March 2000 documentation concerning this 1987 Honda Civic was seized. One such document was a work sheet which acted as a tickler system to West End personnel with respect to the abandoned vehicle process. Trooper McKee testified that the work sheet pertaining to this 1987 Honda Civic vehicle had the notation: "Chris Strong bought and sold." Trooper McKee testified that a review of the Erie Police Department tow logs for this incident revealed that Chris Strong was also the tow

driver for West End Auto on the evening that the vehicle was towed. The vehicle was sold to K. C. Jolley.

In reviewing the abandoned vehicle paperwork submitted to PennDOT regarding this 1987 Honda Civic, Trooper McKee testified that West End indicated on one of the forms that it had placed an ad on October 9, 1998, in the Brown Thompson newspaper. A typewritten ad was submitted to PennDOT along with the form to serve as proof that an ad had been placed. Trooper McKee testified that he researched this claim and found that no such ad had been placed in the Brown Thompson newspaper on that date.

Rachael Drake testified before the Fourteenth Statewide Investigating Grand Jury and a transcript of her testimony was entered into evidence before this grand jury. Drake had been an employee of West End Auto. She testified that West End had a computer program and that at the direction of Dan Strong she was required to make up fictitious ads, photocopy them and attach them to abandoned vehicle paperwork which was submitted to PennDOT. Drake testified that this was done because it was too expensive to actually run an ad. Drake testified that both Dan and Julie Strong instructed her in this process.

Trooper McKee testified concerning a 1976 three-quarter ton pickup truck which Wallace Reichard had been in the process of purchasing from Excaliber Auto Sales. Reichard himself also testified before the Grand Jury on September 27, 2001. Reichard testified that he bought the truck from Excaliber, but the vehicle became inoperable after a period of time. As a result, he bought a Volkswagen Rabbit from Excaliber. Reichard was an employee of Excaliber at the time of both purchases.

According to Reichard, he had paid off the truck and requested Excaliber to forward him the title to the vehicle. Excaliber refused to provide the title, alleging that Reichard owed money for both the Volkswagen and for other matters. As a result of this dilemma, Reichard, who was now working for Strong, approached Dan Strong and asked Strong whether Strong could get the title. Strong advised Reichard to go to Attorney David Ridge who might be able to help him. Attorney Ridge wrote letters on behalf of Reichard to Excaliber's owner, Jim Quinlisk, threatening suit if Excaliber did not attempt to resolve the problem amicably. Reichard testified that Excaliber never forwarded title to the truck in response to Ridge's letters. As a result, Reichard again approached Strong for assistance. Strong advised Reichard that he needed to have the truck towed to West End as a "private property tow." Strong advised Reichard that if he left the vehicle on West End property for thirty days then Strong could initiate the abandoned vehicle process and obtain a salvage title for the truck.

Reichard towed the truck to West End and logged the tow into the West End private property tow log. Reichard testified that Strong pointed out that he had made a mistake by failing to call the Erie Police Department and report the private property tow. Strong told Reichard that failure could be a problem for them because the Erie Police Department would not have a record of the tow.

Nevertheless, Reichard's truck remained on Strong's property. Strong created fictitious storage fees so that if Excaliber attempted to obtain the vehicle from Strong, Excaliber would either have to pay large fees or just leave the vehicle at West End.

The abandoned vehicle process for the truck was initiated when Mark Sanders signed a MV 952 on April 23, 1997. Once the process was initiated, Jim Quinlisk, the owner of Excaliber, received a letter from PennDOT advising him that the vehicle was being abandoned at West End. As

a result, Quinlisk called Dan Strong and inquired as to what was going on. Strong told Quinlisk, "Everybody has to every now and then take a bite of shit sandwich. Today's your day." Strong then hung up on Quinlisk. Strong and West End subsequently received a salvage title for the truck and the vehicle was sold by Reichard and Strong to another person.

Trooper McKee testified that paperwork seized from West End Auto included a certified letter sent to Reichard from West End Auto and returned to West End unclaimed. Trooper McKee opened the letter and testified that somebody handwrote "forever" on the form letter where West End left a space to place the date the vehicle was declared abandoned.

Trooper McKee testified about a 1985 Jaguar owned by Merrell Timmons. Timmons' Jaguar was parked on private property when it was booted and towed for unpaid fines. The vehicle was towed to West End Auto. At the time the vehicle was booted and towed, Timmons was in jail on other matters. It was later discovered that Timmons had been given credit for the unpaid parking fines and the vehicle had been improperly booted.

While Timmons was in jail, an individual showed up at West End Auto with a forged pink slip in an attempt to obtain the Jaguar. West End personnel turned this individual away. When Timmons found out about this attempt to obtain the Jaguar, he contacted the Erie Police Department and advised them not to let anybody take his vehicle. As a result, Erie Police Department Captain Kuhn contacted West End and advised them to contact the police if anyone should attempt to obtain the Jaguar. Trooper McKee testified that the tow logs reflected that the vehicle was not to be released as per instructions of the Erie Police Department.

While Timmons was in jail, Donald Galbreath had discovered that the Jaguar was located on West End property. Galbreath knew Timmons' prior to the Jaguar being towed to West End and had

expressed interest in the Jaguar before Timmons went to jail. Once Galbreath learned that the Jaguar was at West End, he went to West End and expressed interest in purchasing the Jaguar. Dan Strong advised Galbreath that he could buy the Jaguar after West End obtained a salvage title.

According to documentation seized during the execution of a search warrant at West End /Auto, the Jaguar had been towed to West End on July 23, 1998. A MV-952 initiating the abandoned vehicle process was signed by Officer Mark Sanders on August 25, 1998. Despite the fact that the Erie Police Department had contacted West End and told them not to release the vehicle, the MV-952 indicated "no record found" for the last registered owner of the vehicle. Strong subsequently received a salvage title from PennDOT and sold the Jaguar to Galbreath. The sale to Galbreath occurred on October 2, 1998, the same day that Timmons got out of jail.

After Timmons got out of jail he contacted West End concerning his Jaguar. At that time he was advised that the Jaguar had been sold. As a result, Timmons proceeded to the Erie Police Department and complained. According to Erie Police Department records and testimony provided by members of the Erie Police Department, Captain van Buskirk conducted an internal investigation, however, no disciplinary action was instituted against Sanders for signing the MV-952. It was this incident that prompted the Erie Police Department to issue its October 23, 1998 order prohibiting its officers from signing MV-952s unless authorized.

Timmons demanded money from the city of Erie and the city eventually offered a few hundred dollars to settle the complaint. Timmons subsequently agreed to settle because he was returning to prison and he wanted money in his account.

## RECOMMENDATION OF CHARGES

Based on the evidence we have obtained and considered, which established a prima facie case, we, the members of the Seventeenth Statewide Investigating Grand Jury, recommend that the Attorney General or his designee, institute criminal proceedings against the following individuals and charge them with the listed offenses:

**DAN STRONG**

Corrupt Organizations, 18 Pa.C.S. §911 (b) (3) & (4);

Theft by Unlawful Taking, 18 Pa.C.S. §3921;

Theft by Deception, 18 Pa.C.S. §3922;

Theft by Failure to Make Required Disposition of Funds Received, 18 Pa.C.S. §3927;

Unsworn Falsification to Authorities, 18 Pa.C.S. §4904;

Tampering with Public Records or Information, 18 Pa.C.S. §4911; and

Criminal Conspiracy, 18 Pa. C.S. §903, to Commit Theft by Unlawful Taking, 18 Pa.C.S. §3921; Theft by Deception, 18 Pa.C.S. §3922; Theft by Failure to Make Required Disposition of Funds Received, 18 Pa.C.S. §3927; Unworn Falsification to Authorities, 18 Pa.C.S. §4904; and Tampering with Public Records or Information, 18 Pa.C.S. §4911.

**CHRIS STRONG**

Corrupt Organizations, 18 Pa.C.S. §911 (b) (3) & (4);

Theft by Unlawful Taking, 18 Pa.C.S. §3921;

Theft by Deception, 18 Pa.C.S. §3 922;

Theft by Failure to Make Required Disposition of Funds Received, 18 Pa.C.S. §3927;

Unsworn Falsification to Authorities, 18 Pa.C.S. §4904; Tampering with Public Records or Information, 18 Pa.C.S. §4911; and

Criminal Conspiracy, 18 Pa. C.S. §903, to Commit Theft by Unlawful Taking, 18 Pa-C.S. §3921; Theft

by Deception, 18 Pa.C.S. §3922; Theft by Failure to Make Required Disposition of Funds Received,

18 Pa.C.S. §3927; Unsworn Falsification to Authorities, 18 Pa.C.S. §4904; and Tampering with Public

Records or Information, 18 Pa.C.S. §4911. **JULIE STRONG**

Unsworn Falsification to Authorities, 18 Pa.C.S. §4904;

Tampering with Public Records or Information, 18 Pa.C.S. §4911; and

Criminal Conspiracy, 18 Pa. C.S. §903, to Commit Theft by Unlawful Taking, 18 Pa.C.S. §392 1;

Theft by Deception, 18 Pa.C.S. §3922; Theft by Failure to Make Required Disposition of Funds

Received, 18 Pa.C.S. §3927; Unsworn Falsification to Authorities, 18 Pa.C.S. §4904; and Tampering

with Public Records or Information, 18 Pa.C.S. §4911. **DAVE BAGNONI**

Unsworn Falsification to Authorities, 18 Pa.C.S. §4904;

Tampering with Public Records or Information, 18 Pa.C.S. §4911; and

Criminal Conspiracy, 18 Pa.C.S. §903 to Commit Unsworn Falsification to Authorities, 18

Pa.C.S. §4904, and Tampering with Public Records or Information, 18 Pa.C.S. §4911. **MARK**

**SANDERS**

Deceptive or Fraudulent Business Practices, 18 Pa.C.S. §4107 (a)(6) [Accomplice Liability, 18
Pa.C.S. § 306];

Securing Execution of Documents by Deception, 18 Pa.C.S. §4114;

Unsworn Falsification to Authorities, 18 Pa.C.S. §4904; Tampering

with Public Records or Information, 18 Pa.C.S. §4911;

Criminal Conspiracy, 18 Pa. C.S. §903, to Commit Theft by Unlawful Taking, 18 Pa.C.S. §3921; Theft by Deception, 18 Pa.C.S. §3922; Theft by Failure to Make Required Disposition of Funds Received, 18 Pa.C.S. §3927; Unsworn Falsification to Authorities, 18 Pa.C.S. §4904; Tampering with Public Records or Information, 18 Pa.C.S. §4911; Deceptive or Fraudulent Business Practices, 18 Pa.C.S. §4107 (a)(6) and Securing Execution of Documents by Deception, 18 Pa.C.S. §4114.

**VICTIM(S) SHARON PIERSON, ALLSTATE INSURANCE, NATIONAL CITY BANK
AND THE COMMONWEALTH OF PENNSYLVANIA** STOLEN AND RECOVERED
VEHICLE
**1996 TOYOTA TERRCEL BEARING VIN JT2AC52L3T0150195 AND
PENNSYLVANIA REGISTRATION PLATE BKH5401.**

PIERSON bought this car with a car loan from National City. The car was stolen on
07/12/98 at which time the theft was reported to the Erie Police Department. The Erie
Police Department recovered the stolen car on 09/16/98 and the car was then towed to
the Erie Police Department for processing. Following processing West End Auto Body Inc.
towed the car to their lot where West End Auto Body Inc. personnel completed a MV-952
declaring the car abandoned. The car was then sold to Platinum and later re-sold to
Lukes Automotive. Lukes then sold the car to a customer. Prior to the car's recovery the
victim's insurance company, Allstate, paid a claim to National City Bank.

DATE OF THEFT ALLSTATE PAID NATIONAL CITY CLAIM ON THIS VEHICLE 09/15/98
DATE OF RECOVERY AND TOW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 09/16/98
DATE MV-952 WAS SIGNED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10/16/98
DATE MV-956 WAS SIGNED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11/23/98
DATE PLATINUM AUTO BODY BOUGHT THE CAR . . . . . . . . . . . . . . . . . . . UNKNOWN
DATE LUKES BOUGHT THE CAR FROM PLATINUM . . . . . . . . . . . . . . . . . UNKNOWN
DATE LUKES SOLD VEHICLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 06/05/99

**Erie Police Department Officer Mark SANDERS signed** this MV-952 for West End Auto Body
Inc. A review of this form shows the following discrepancies on the form: **The VIN listed on this
form is wrong. The** VIN **listed is JT2AC52L3T1050195. The eleventh and twelfth digits should
have been 01 instead of 10.** There is no vehicle year listed, there is not a title number listed and
there is no mileage listed for the vehicle. The value for this vehicle is listed as **valueless except for
junk, under** $250.00, even though the vehicle was only 2 **years old** when stolen and recovered.
No record found is listed for the owner's name even though this vehicle was towed to West End
Auto Body Inc. and would have been accompanied by an Erie Police Department towed vehicle
report. Also the Erie Police Department knew that the vehicle belonged to the victim due to the fact
that it was a recovered stolen vehicle. The damages listed for this vehicle are suspicious as well.
The vehicle was listed as having rust on it even though it was only two years old. From the attached
photograph it is difficult to determine whether or not the left door and fender are damaged as
reported. Vehicle was listed as being abandoned on West End property.

**Julie STRONG signed** this form for West End Auto Body Inc.

A review of the MV-956 shows that the wrong VIN was listed. It also shows that someone listed
the registration plate as "N/A". No mileage was listed on this form. The

newspaper ad listed on this form was a valid ad. Note! The wrong VIN was listed in the ad.

**Julie STRONG signed** this form for West End Auto Body Inc.

Note! I located 2 MV-956 forms. Both forms appear identical with the exception that one form under the approx. value section the value $250.00 or less is crossed out. A review of Penn Dot records shows that the form with the $250.00 or less crossed out was the form submitted to Penn Dot.

Note! There is no MV-957 authorizing West End Auto Body Inc. to dispose of a vehicle with value since West End Auto Body Inc. sent in an MV-952 form listing the 2 year old vehicle as having a value of $250.00 or less.

The Pennsylvania State Police served a search warrant at West End Auto Body Inc. in March of 2000. Numerous documents related to this vehicle were located. Not located was the EPD towed vehicle slip that should have accompanied this vehicle at the time of the tow (I did receive a copy of the towed vehicle report from the EPD). A review of the West End Auto Body Inc. worksheet shows a notation that the EPD lost the towed vehicle report. Notes also show that this vehicle was **sold to R&B on 12/14/98.** This is not accurate. The vehicle was **sold to Platinum Auto Body.** This document also lists the wrong VIN for this vehicle. Note! There is not a sale price paid for this vehicle anywhere on this form.

Tow logs were reviewed and I was able to locate this vehicle on page 74 line I I of the 1998 West End Auto Body Inc. City authorized tow logbook. This entry shows that the vehicle was towed on 09/16 and lists the vehicle's plate number as BKH5401. It shows that the vehicle was towed from 1200 Wayne to the EPD and then to lot C at West End Auto Body Inc. **Chris STRONG** was the tow truck driver for this vehicle.

Note! According to interviews conducted by this Trooper the tow truck driver was the employee who would have been responsible for providing the vehicle's VIN to the office staff. The entries also show that this vehicle was sold to R&B 12/98 and also list Auto Cycle for unknown reasons. Neither of these businesses bought this car. Platinum Auto Body bought this car.

The EPD tow log shows this vehicle entered on page 150 line #6. It shows the tow date as reported and lists the vehicle as **recovered stolen** vehicle and then lists the vehicle as salvage. The vehicle's reg. Plate is listed as well as the customer's name.
I interviewed Lee MINTER, owner of Lukes Automotive, relative to this vehicle and another vehicle that he bought from West End Auto Body Inc. MINTER stated that he sold this car to a friend of his by the name of James PEARSALL adding that he lives in Maryland somewhere. MINTER stated that he bought this car from Platinum Auto Body, not from West End Auto Body Inc. MINTER stated that he knew about this vehicle before West End Auto Body Inc. completed the paperwork for the car. He stated that he inquired about the car and was told that whenever West End Auto Body Inc. received a

title for the car he could have it. MINTER stated that he paid **$4000.00** for the car adding that he knows Eric TETUAN, owner of Platinum. He stated that he helped Eric get started in business and bought the car to help Eric out with money. He stated that he sold the car for **$6,000.00** adding that he didn't know what if anything Platinum did on the vehicle as far as repairs. MINTER stated that Platinum Auto Body (Eric TETUAN) put a couple of new body parts on the car and painted the vehicle. MINTER stated that he is unsure what the title said before he received it. He stated that TETUAN might have mentioned to him that the car was purchased from West End Auto Body Inc. but he was not sure.

A review of Penn Dot documents shows that I was sent two sets of documents. One set with the correct VIN and one set with the incorrect VIN.

The **incorrect** VIN paperwork shows that on 06/24/99 Lukes was mailed a letter from Penn Dot. This letter mentioned that an incorrect VIN was listed on the vehicles out of state proof of ownership. The letter requests that Lukes obtain a VIN tracing and resubmit paperwork. There is no tracing attached but we must assume that the tracing was sent in enabling Luke's customer to obtain a good title with the vehicle's correct VIN. This paperwork also shows that **Dan STRONG** signed the back of the title for West End Auto Body Inc.

The correct VIN paperwork shows that the victim purchased the vehicle on 06/25/97.This paperwork also shows that Dick SNEERINGER completed an application for correction or change of vehicle record showing that the VIN was corrected on 10/18/00. There is also a document that shows that PEARSALL sold the car to SNEERINGER on 10/17/00.

I interviewed Eric John TETUAN stated that W/N-M-28 03/23/74 459-7306 owner of Platinum Auto Body. He stated that he bought this vehicle from West End Auto Body Inc. for $800-$1 100 and that he then sold it to Lukes Automotive. He stated that he could not remember exactly what he sold it for.

TETUAN stated that this was one of the few vehicles that he bought from West End Auto Body Inc. He stated that this in fact was the last vehicle that he bought from West End Auto Body Inc. TETUAN stated that he bought cars from West End Auto Body Inc. TETUAN stated that **Chris STRONG** would call him whenever West End Auto Body Inc. had a car that West End Auto Body Inc. thought that he'd (TETUAN stated that) would be interested in.

TETUAN stated that he bought the car, fixed it and sold it with the salvage title. He stated that he did not have any trouble with the VIN due to the fact that he didn't deal with the title. He stated that he just sold the vehicle as salvage and that Lukes would have needed to obtain the R-title. TETUAN stated that Lukes had trouble with the title from what he remembers.

TETUAN stated that he could not remember how much money he had to put into this car. He stated that he painted the car and fixed some dents. TETUAN stated that stated that he also put a new bumper and fender on the car.

I spoke with Sharon Marie PIERSON, W/N-F-25, at which time she stated the following: PIERSON stated that she bought this vehicle through National City for approx. $9,000.00 in 1997. She stated that she went to the Liberty Club one night and when she came out of the club the car was gone. PIERSON stated that she reported it stolen to the EPD and that a report was taken. PIERSON stated that the car was not found for several months. She stated that her insurance company, Allstate, settled with the National City Bank for her car loan. PIERSON stated that for some reason the insurance company paid the entire loan off with the exception of $1,000.00. PIERSON stated that the bank informed her of this but that she didn't have the money to pay the $1,000.00 nor did she have the car so she didn't pay the last $1,000. She stated that apparently the car was towed by West End Auto Body Inc. adding that an EPD detective brought her some of her personal items. She stated that she didn't get her new stereo system that she put in the car. PIERSON stated that she didn't know if the car was damaged by when it was stolen or not.

I received a copy of EPD theft report that shows that Officer REYNOLDS took this theft report on the date in question. The report also shows that the car was recovered on 09/16/98. The report doesn't mention anything about the vehicle being damaged when it was recovered. There was no information about the vehicle's recovery at all other than to state that the car was recovered in the 1200 block near the ball field. EPD personnel processed the vehicle. The towed vehicle log does show that the vehicle's stereo was stolen and that there was damage to the vehicle and evidence of criminal mischief done to this vehicle.

I spoke with Robin at the National City Bank Collection Department, 1-800-622-4096 Ext. 5086, relative to the auto loan that PIERSON had with the bank. Robin explained that there is still an outstanding balance on the account that has been charged off. Robin could not provide me with the balance. Robin explained that she was unable to find anything on their system that showed that National City bank was informed of this vehicle's theft. She stated that she would be unable to provide any additional information on this account due to privacy issues.

I contacted Darrel MATTHEWS of the Allstate Insurance Company Special Investigations Unit, 1721 Cochran Rd. Pittsburgh, Pa. 15220 412-572-7255. MATTHEWS stated that the claim number for this vehicle is 6652315034. He stated that the claim was filed on 07/12/98. He stated that they paid out just over $8,000.00.

COPY : DISTRICT JUSTICE

**COMMONWEALTH OF**

**PENNSYLVANIA**

**COUNTY OF ERIE**

**RETURN WHERE**
**DEFENDANT IS**
**FOUND**

**WARRANT OF ARREST**

WARRANT CONTROL NO.:

____ **1015302**

To any authorized person:

In the name of the Commonwealth of Pennsylvania, you are commanded to
take into custody    DOB: 8/29/63 M WHITE

If the defendant be found in said Commonwealth, and bring the defendant
before us at    JOHN A VENDETTI
(Address):

to answer the Commonwealth or    **PA ST POL-ERIE E**
(Political Subdivision)
upon the complaint or citation of    **MCKEE, JAY D.**
charging the defendant with    **18 §4904 §§A2**
**UNSWORN FALS AUTH FORGED DOC**
and further to be dealt with according to law, and for such purposes
this shall be your sufficient warrant.

Witness the hand and official seal of the *ssuing authority on this

_____ /        d f                    , º~O

**SEAL** _____
(Signature)

Magisterial District No.        Amount required to

Citation No.:    **ED**            **STICE os.frJ : $**

Docket No.: **MX**            *RES i*        $
**OTN:**            *EXPIRES*
Amount needed to satisfy collateral:

$ Reason for warrant: **FELONY**

El I took into custody the within named

O He is now at liberty on bail posted
before

                                    jail.

                    –

for fine and costs.

L1 I accepted a not guilty plea
and collected $
for collateral.
El I accepted the fine and costs
due in the amount of

(Signature of Officer - Name & Title)

**RETURN WHERE DEFENDANT**
**IS NOT FOUND**
After careful search, I cannot
find
the within named defendant

CR-0000045-03

**COMMONWEALTH**
**OF    .**
**PENNSYLVANIA**

OFFENSE DATE    **12/31/96**

I acknowledge that I am voluntarily
and knowingly pleading guilty. I paid
to the officer the fine and costs
stated in the warrant in the amount
of

(Defendants Signature)

I acknowledge that I am
voluntarily and knowingly
pleading not guilty.
I paid to the officer the collateral for
my appearance at trial stated in the

(Defendant's Signature)

Officer's costs:
Warrant        _____

SIGNATUREMiles @        _____
Commitments        _____
                0

Total

AOPC 417-99

Report Date: **2/12/03**                    **WARRANT OF ARREST**                    Time: **1:49 PM**

Mag. Dist. No.: 06-1-03 OTN:



Defendant Name: **SANDERS, MARK**

**CR-0000045-03**        (CONTINUED)

18 §4107 §§A6 DEC BUS PRACT-FALSE/MIS STATE CRED

18 §903 §§A1

18 §903 §§A1

18 §4911 §§A1 TAMPER WITH PUBLIC RECORD/INFORMATION

18 §4911 §§A2 TAMPER WITH PUBLIC RECORD/INFORMATION

18 §903 §§A1

18 §903 §§A1 CRIMINAL CONSPIRACY

A732-00

# COMMONWEALTH OF
# PENNSYLVANIA

**WARRANT OF ARREST**

WARRANT CONTROL NO.:

### COUNTY OF ERIE _____

By authority f this warrant -3.Z603 KI

_____ **1015302**
_____ DOCKET
NUMBER:

To any authorized person:

In the name of the Commonwealth of Pennsylvania, you are commanded to

take into custody    **DOB: 8/29/63 M WHITE**

O  He is now at liberty on ball posted

before

**COMMONWEALTH
OF
PENNSYLVANIA**

If the defendant be found in said Commonwealth, and bring the defendant

jail.

OFFENSE DATE    **12/31/96**

to answer the Commonwealth or _____ **PA ST POL-ERIE E**

$
for fine and costs.

I acknowledge that I am voluntarily and knowingly pleading guilty. I paid to the officer the fine and costs stated in the warrant in the amount of

(Political Subdivision)

upon the complaint or citation of    **MCKEE, JAY D.**
charging the defendant with    **18 §4904 §§A2**
**UNSWORN FALS AUTH FORGED DOC**
and further to be dealt with according to law, and for such purposes this shall be your sufficient warrant.
Witness the hand and official seal of the )issuing authority on this

p I accepted a not guilty plea and
collected $
for collateral,
0 I accepted the fine and costs due in
the amount of

_____

(Defendants Signature)

I acknowledge that I am voluntarily and knowingly pleading not guilty.
I paid to the officer the collateral for my appearance at trial stated in the warrant in the amount of

_____

J
*DIS1N1Cr*

(Signature of Officer- Name & Title)
**RETURN WHERE DEFENDANT
IS NOT FOUND**
After careful search, I cannot find the within named defendant

(Defendants Signature)

Magist~~k8    *MLIWIA* Amount required to satisfy
~( /RES
13
- ,.. sentence:

Citation No    EL-903536         Fine: $
**F . ILED**             −..'2/12/03

Amount needed to satisfy collateral: $

Reason for warrant:    **FELONY**

       **COPY : SHERIFF/CONSTABLE**

SIGNATURE
~~~? **s,3eaoN**
NAME
_____ i f

Officer's costs:
Warrant Miles @
Commitments
Miles @
Conveying to hearing
Miles @
       Total

AOPC 417-99

# WARRANT OF ARREST
## ADDITIONAL CHARGES

Report Date: **2/12/03**

Time: **1:49 PM**

Mag, Dist. No.: 06-1-03

OTN:

Defendant Name: **SANDERS, MARX**

**CR-0000045-03**                    {CONTINUED}

18 §4107 KA6 DEC BUS PRACT-FALSE/MIS STATE CRED 18
§903 $$A1
18 §903 $$A1
18 §4911 $$A1 TAMPER WITH PUBLIC RECORD/INFORMATION 18
§4911 $$A2 TAMPER WITH PUBLIC RECORD/INFORMATION 18 §903
$$A1
18 §903 $$A1 CRIMINAL CONSPIRACY

4(

X

A

COMMONWEALTH OF PENNSYLVANIA

COUNTY OF: **ERIE**

# PRELIMINARY ARRAIGNMENT NOTICE

**COMMONWEALTH OF**

**PENNSYLVANIA**

Mag. Dist. No.:
**06-1-03**

DJ Name: Han.
**JOHN A. VENDETTI**
Address: **718 WEST 18TH STREET**
**ERIE, PA**

Telephone: **(814) 451-6528**     **16502-0000**

**VS.**

DEFENDANT: NAME and ADDRESS
**F-SANDERS, MARK**
**1931 W 32ND ST**
**ERIE, PA 16508**

**JOHN A. VENDETTI**
**718 WEST 18TH STREET**
**ERIE, PA 16502-0000**

L                                                    J

DocketNo.: **CR-0000045-03**
Date Filed:     2/12/03
OTN:     **H** 687927-2



Charge(s):

**18 §4904 §§A2 UNSWORN FALS AUTH FORGED DOC**
**18 §4107 §§A6 DEC BUS PRACT-FALSE/MIS STATE CRED**

You are hereby notified that a preliminary arraignment will be held in the above captioned case at the following time and place:

Date:     2/13/03     Place: **DISTRICT COURT 06-1-03 718**
**WEST 18TH STREET**

Time:     **10:00** AM

**ERIE, PA 16502-0000**

At the preliminary arraignment, you will be given a copy of the criminal complaint that has been filed against you. In addition, you will be advised of your right to counsel, your right to a preliminary hearing, and the amount and types of bail available if your offense is a bailable offense.

At the preliminary arraignment, a date and time will be fixed for your preliminary hearing and you will be given a reasonable opportunity to post bail. If bail is not posted, you may be committed according to law.

If you have any questions, please call the above office immediately.

2/13/03 Date _____ ~~ _____

My commission expires first onday of January,

District Justice
SEAL

**If you are disabled and require a reasonable accommodation to gain access to the Magisterial District Court and its services, please contact the Magisterial District Court at the above address or telephone number. We are unable to provide transportation.**

**DATE PRINTED: 2/13/03 COMPLAINT NUMBER: EL-903536**

- COMMONWEALTH OF PENNSYLVANIA

COUNTY OF: **ERIE**

# NOTICE OF
# PRELIMINARY HEARING
## COMMONWEALTH OF
### PENNSYLVANIA

Mag. Dist. No.:

**06-1-03**

**JOHN A. VENDETTI**
Address: **718 WEST 18TH STREET**
**ERIE, PA**

Telephone: **(814 451-6528       16502-0000**

**VS.**
NAME and ADDRESS

DEFENDANT:
1**SANDERS, MARK**
**1931 W 32ND ST**
**ERIE, PA 16508**

**JOHN. A. VENDETTI**
**718 WEST 18TH STREET**
**ERIE, PA 16502-0000**

L                                          J

Docket No.: **CR-0000045-03**
Date Filed:     **2/12/03**
OTN:           **H 687927-2**



| Charge(s): |
| --- |
| 18 §4904 §§A2 'UNSWORN PALS AUTH FORGED DOC<br>18 §4107 §§A6 DEC BUS PRACT-FALSE/MIS STATE CRED 18<br>§903 §§A1 |

## NOTICE TO DEFENDANT

A complaint has been filed charging you with the offense(s) Set forth above and on the attached copy of the complaint. A preliminary hearing on these charges has been scheduled for:

Date:          **2/21/03**          Place: **CENTRAL COURT ERIE COUNTY COURTHSE**
**140 WEST 6TH STREET**

Time:          **9: 0 OAM**          **CENTRAL COURT ROOM #117**
**ERIE, PA 16501**

If you fail to appear at the time and place above, a warrant will be issued for your arrest. At the

preliminary hearing you may:

  1. Be represented by counsel;

2. Cross-examine witnesses and inspect physical evidence offered against you;

  3. Call witnesses on your behalf other than witnesses to testify to your good reputation only, offer
     evidence on your behalf and testify;

  4. Make written notes of the proceeding, or have your counsel do so, or make a stenographic,
     mechanical or electronic record of the proceedings.

**It you cannot afford to hire an attorney, one may be appointed to represent you. Please contact the office of the district justice for additional information regarding the appointment of an attorney.**

If you have any questions, please call the above o ice immediately.

2/13/03   Date

## OU

.. _____ ,  District Justice
My commission expires first onday of January, **2006** .          **SEAL**

**If you are disabled and require a reasonable accommodation to gain access to the Magisterial District Court and**
AOPC 629-02

Report  Date:  3/24/03

System  Date:  3/24/03

Report Id: CSS25R

# CURRENT BAIL INFORMATION



Time:    2:02

Mag. Dist. No.: 06-1-03

Docket Number: **CR-0000045-03**

Defendant Name: **SANDERS, MARK**

Last Bail Action: <u>SET</u> Date: 2/13/03  TimeIO:OOAM

Current Set Amount: $ __ 250, 000.00 Date: 02/13/03

Common Pleas Court Order Number: _____

Event Type ARRAIGNMENT _____       Date: 02/13/03 Time: 10 : 00AM

Release Type 1: **UNSECURED BAIL**          Release Type 2:

Monetary Release Type:

Bail Bond Signed: XEZ Date: _ 02/--W03 Time: 11: **09AN**

| SURETY TYPE | SURETY NAME AND ADDRESS | SECURITY POSTED TYPE    AMOUNT | PAID IN AMOUNT Ir |
|---|---|---|---|

| LAST .SURETY TYPE | LAST RECEIPT NUMBER | LAST RECEIPT DATE | LAST RECEIPT AMOUNT | LAST SURETY TYPE | LAST REFUND DATE | LAST REFUND CHECK NUMBER |
|---|---|---|---|---|---|---|

Nominal/Unsecured Surety: _____ SANDERS. MARK

Release Conditions in Addition to Bail Bond Conditions:

Domestic Violence Conditions Imposed? NQ

Bail Forfeiture Amount: $ _____       Date of Execution of

Forfeiture: _____ Bail Forfeiture Set Aside Amount: $

_____

Reason for Last Bail Action of: _____

A503A-97

**COPY: DISTRICT JUSTICE**

PRINTED: 3/24/03 2:02:45 PM



## .TRANSFER NOTICE

Case N**U&MONWEALTH OF PENNSYLVANIA**        Docket No. _ **0000045 – 03**

    **Vs.**
    **SANDERS, MARK**

Date of Transfer: ___ **3/25/03**                Transfer I.D. No.: **06-1-030008584**
Case Action:    ___ **CASE TRANSFER**            Court Order No.: **K. YEAGER** _____
Transfer Reason:    **OTHER**                    Agreement/Request Filed:

**Originating District Justice Information**

Magisterial District:            **06-1-03**
District Justice Name:           **VENDETTI. JOHN A**
District Justice Address:        **718 WEST 18TH STREET**
                                 **ERIE. PA 16502**

District Justice Telephone No.: ___ **(814) 451-6528**
Case Type:                       **CRIMINAL**

**Receiving District Justice Information**

Magisterial District: _____ **06-3-02**
District Justice Name:            **ABATE. JR.. FRANK**
District Justice Address: _____ **10300 WEST MAIN ROAD**
                                   **P.O. BOX 8**
                                   **NORTH EAST, PA 16428-0008**
District Justice Telephone No.: __ **(814) 725-9693**

AOPC 625-00

COMMONWEALTH OF PENNSYLVANIA

COUNTY OF: **ERIE**

**NOTICE OF CONTINUANCE**

**COMMONWEALTH OF**

**PENNSYLVANIA**

Mag. Dist. No.:

**06-3-02**

DJ Name: Hon.

**FRANK ABATE, JR.**
Address: **10300 WEST MAIN ROAD**
**P.O. BOX 8**
**NORTH EAST, PA**
Telephone: **(814) 725-9693      16428-0008**

**VS.**
NAME and ADDRESS

DEFENDANT:
**FSANDERS, MARK**
**1931 W 32ND ST**
**ERIE, PA 16508**

**FRANK ABATE, JR. 10300
WEST MAIN ROAD P.O.
BOX 8
 NORTH EAST, PA 16428-0008**

L                                                                                I

Docket No.: **CR-0000042-03**
Date Filed:      **2/12/03**
OTN:      **H 687927-2**



Please note that the hearing in the above captioned case, which was scheduled to occur on: 2/21/03

has been continued to:

Date:          **6/02/03**          **Place:DISTRICT COURT 06-3-02**
                                              **10300 WEST MAIN ROAD**
Time:          **9:00 AM**
                                     **P.O. BOX 8**

If you have any questions, please contact this office immediately.

**MCKEE, JAY D.**

Continuance requested by:

**If you are disabled and require assistance, please contact the Magisterial District office at the address above.**

**4/02/03** Date _____,_/_____"                                      , District Justice

My commission expires first Monday of January, **2006 .**                    SEAL

**DATE PRINTED: 4/02/03 COMPLAINT NUMBER: EL-903536**

AO PC 616-02          **DATE COMPLAINT SIGNED : 2/12/03**

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF: **ERIE**

NOTICE OF CONTINUANCE

Mag. Dist. No.: 06-3-02

DJ Name: Hon. FRANK ABATE, JR.
Address: 10300 WEST MAIN ROAD
P.O. BOX 8
**NORTH EAST, PA**
Telephone: (814) 725-9693     16428-0008

**COMMONWEALTH OF**

**PENNSYLVANIA**

**VS.**
NAME and ADDRESS

DEFENDANT:
FSANDERS, MARK
1931 W 32ND ST
**ERIE, PA** 16508

L                                                                J

FRANK ABATE, JR.
**10300 WEST MAIN ROAD**
P.O. BOX 8
NORTH EAST, PA 16428-0008

DocketNo.: **CR-0000042-03**
Date Filed:     2/12/03
OTN:     H 687927-2



Please note that the hearing in the above captioned case, which was scheduled to occur on: _____  *6/02/03*

_____ has been

continued to:

| Date: | 6/23/03 | **Place:DISTRICT COURT** 06-3-02 |
|---|---|---|
| | | **10300 WEST MAIN ROAD** |
| Time: | **9:00 AM** | |
| | | P.O. BOX 8 |
| | | NORTH EAST, **PA 16428-0008** |

If you have any questions, please contact this office immediately.

Continuance requested by: _____ **GARHART** **ESQ, JOHN P**

**If you are disabled and require assistance, please contact the Magisterial District office at the address above.**

5/13/03 Date _____ f _____ -?-- _____ , District Justice
*My commission expires first Monday of January, 2006 .*                    SEAL

IN THE COURT OF COMMON. PLEAS
OF ERIE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMONWEAILTH OF PENNSYLVANIA

" Vs                          No: *502 Misc 2003*

DANIEL STRONG, et al
        Defendants

### ORDER

*AND NOW,* this _1_ day of ___-A-'___ _____ , 2003, upon

consideration of the attached petition, it is hereby'ORDERED that

a hearing be held on the within Commonwealth's Petition for the

Application to File Information without Preliminary Hearing on the

/~ .day of _____ , 2003, in the Erie

County Courthouse, Erie, Pennsylvania, Courtroom Number C , at

/`3d    o'clock _p_ .M. All other proceedings are stayed

Application.

BY THE COURT:

_____ , J.

A TRUE COPY AS FILED

ATTE _____
        DEP C



**COMMONWEALTH OF PENNSYLVANIA**
**OFFICE OF ATTORNEY GENERAL**
February 25, 2003

**Drug Strike Force Section**
10950 Route 30
North Huntingdon, PA 15642

**MIKE FISHER**
**ATTORNEY GENERAL**

The Honorable John Vendetti
District Justice, Erie County
718 W. 18th Street
Erie, Pennsylvania 16502

**Re: Commonwealth vs. Daniel Strong**
     **Commonwealth vs. Julie Grehl**
     **Commonwealth vs. Chris Strong**
     **Commonwealth vs. David Bagnoni**
     **Commonwealth vs. Mark Sanders**

Dear District Justice Vendetti:

Enclosed herewith please find a copy of an Order recently signed by the Honorable William R. Cunningham, President Judge scheduling a hearing pertaining to the above-captioned matter. Due to the nature of the Commonwealth's Application and the upcoming hearing date, all further proceedings are stayed pending Judge Cunningham's decision.

This Office will forward a copy of the Judge's decision pertaining to the Commonwealth's Application once it is received.

-If you have any questions, please feel free to contact me at (724) 861-3620.

Sincerely,

Mark A. Serge
Deputy Attorney General

MAS:tab
Enclosure as stated

WAIVER OF SPEEDY TRIAL RIGHTS

DATE:, /' 2j/,

_1Y¡jkj? SXX1&,_ ereby ackowledge that **I have** been

*notified by* the District Justice of my preliminary hearing date,and am

requesting that my hearing date be continued. New hearing date: /&// /ᵃ'

I have been advised and I *understand* that I have a constitutional right

to a speedy trial; that pursuant to Pa. R. Crim. 600 , the Commonwealth must

bring my case to trial within 365 days from the date of this filing of the

Criminal Complaint charging me. If my case is not brought to trial **within 365'**

**days from the filing of the Criminal Complaint, I** understand that I can ask the court to

dismiss all charges against me. Further, I understand that **in the** event I am

incarcetated on these charges, the **Caimonwealth** must bring my case to trial

within 180 days from the date *of* the filing of the Criminal Complaint; if the

Camionwealth fails to do so, I can ask the Court for nominal bail.

I hereby waive (give up) all of my constitutional **rights** to a speedy trial as

**set forth** above from the date I sign this waiver until **the** date of my actual preliminary

hearing.

Because I am requesting a continuance, I understand that I am giving up my

right to a speeding trial and that the time I am waiving will not count **under** Rule

. 600. if I do. not canplete the requirements imposed on me by the District

Justice in the **time** specified, I understand that this case will be prosecuted'

or reactivated against me and that the speedy trial time will start to run again. I

am requesting the additional time:

,NA To allow the defense additional time for preparation:

r( ))     To obtain a lawyer:
( ) To make restitution:
( ) To settle this case by plea to a summary offense and payment of
        fine and costs and/or restitution within a specified time: (
) To settle this case by agreeing to avoid contact with a victim
        or witness for a specified time.
I have read all of the above and agree to waive'my rights as specified.

witness

efendant name

COMMONWEALTH OF PENNSYLVANIA

COUNTY OF: **ERIE**

NOTICE OF CONTINUANCE

| | |
|---|---|
| Mag. Dist. No.: | **06-3-02** |

DJ Name: Hon.

**FRANK ABATE, JR.**

Address: **10300 WEST MAIN ROAD**
 P.O. BOX 8 NORTH
 EAST, PA

Telephone: **(814) 725-9693**      **16428-0008**

**COMMONWEALTH OF**

**PENNSYLVANIA**

**VS.**

DEFENDANT:      NAME and ADDRESS
FSANDERS, MARK
**1931 W 32ND ST
ERIE, PA 16508**

FRANK ABATE, JR.
**10300 WEST MAIN ROAD**
P.O. BOX 8
 **NORTH  EAST, PA 16428-0008**

L                                                              J

| |
|---|
| Docket No.: **CR-0000042-03** |
| Date Filed:     2/12/03 |
| OTN:     **H 687927-2** |



*Please note that the hearing in the above captioned case, which was scheduled to occur on:* _____ *6/23/03* ____

has been continued to:

**Date:**      **11/24/03**

Time:      **9:00 AM**

**Place: DISTRICT COURT 06-3-02
 10300 WEST MAIN ROAD**

**P.O. BOX 8
NORTH EAST, PA 16428-0008**

If you have any questions, please contact this office

immediately. Continuance requested by:      **SANDERS,**

MARK

**If you are disabled and require assistance, please contact the Magisterial District office at the**

My commission expires first Monday of January, 2006 .

**COMPLAINT NUMBER: EL-903536**

Ao PC 616-02

SEAL

**DATE PRINTED: 9/26/03      2:44:39 PM**
**DATE COMPLAINT SIGNED :**      2/12/03

COMMONWEALTH OF PENNSYLVANIA:     IN THE COURT OF COMMON PLEAS

V.     :     OF ERIE COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

M j3,2   SAxat'

No.

OTN #

## PLEA AGREEMENT

By and between the Commonwealth of Pennsylvania, by and

4.0 -C a rc . Mr.1044⁰

* (

through the _____ c) ___ .-c _____ . S' Police Department

(hereafter the "Commonwealth"), and

/hAiM r -of x.s ,1dt3 f W. 3a2 s1 *i~:G e~ fGS'$ Defendant's Name

Address

_____ O ;14 3 f ga -S~ -2,&&0     y0 l/n

DOB     SS #     Telephone     Age/Sex

WHEREAS, the Defendant is presently charged by

rn _____ CIA d- _____ r"6.); c,,,?' 3 _____ q

art ylo ~~ F 3~ t S -5~`!/l~s'-~} C,rl~`c CY 4« G3~ j _____

WHEREAS, the Commonwealth and Defendant have agreed upon the

resolution of this case as follows: 'Ds.. 't -A!'-rz _____

'J

Ct. _____ C 49&q e,.. _____ p,⊥), c.wf.TS s~ 4

-'4 0491' _____ AS

C. cv w }t 1 _____ cP,-n3:4ALW _____ J     -rc~a .. ..ER- d

~<<.AA-L*e -ti ) 4- -464 R t,D . C.w. U.: t 1 y%1M.Qr Rc.~A1     Gl,   c.s .

-N AW IP 04t '9 KQ     Pr-t...

..7J A Pd A..,E _____ C *s .. WW' bc.. .Z. t, ●t ow J*WL 9 ~`~r~·.A¹6 t, -et

If, as part of this agreement, the Commonwealth agrees to

withdraw any charges and/or to amend any charges, such withdrawal

and/or amendment is contingent upon the Defendant's plea of guilty in

accordance with the terms of the resolution as set forth above.

Further, the Defendant hereby consents to and waives any objection to

the amendment of the Criminal Information by the District Attorney's

Office in order to reinstate any and

COMMONWEALTH OF PENNSYLVANIA

COUNTY OF: **ERIE**

# WAIVER OF
# PRELIMINARY HEARING
### COMMONWEALTH OF

### PENNSYLVANIA

VS.

Mag. Dist. No.:

**06-3-02**

DJ Name: Hon.

**FRANK ABATE, JR.**

Address: **10300 WEST MAIN ROAD**
**P.O. BOX 8**
**NORTH EAST, PA**

Telephone: **(814) 725-9693**      **16428-0008**

DEFENDANT:          NAME and ADDRESS

**FSANDERS, MARK**
**1931 W 32ND ST**



**CLERK OF COURTS**
**ERIE COUNTY COURTHOUSE**
**ERIE, PA 16501**

DocketNo.: **CR-0000042-03**
Date Filed:       **2/12/03**
OTN:       **H 687927-2**

I, the undersigned, certify that I waive my right to a preliminary hearing. I understand that I have a right to this hearing, at which time I have the right to:

    1. be represented by counsel,
    2. cross-examine witnesses,
    3. inspect physical evidence offered against me,
    4. call witnesses on my own behalf, offer evidence on my own behalf, and testify,
    5. make written notes of the proceedings or have my own counsel do so, and
    make a stenographic, mechanical, or electronic record of the proceedings.

I understand that if a prima facie case of guilt is not established against me at this hearing, the charges against me would be dismissed.

[] I have had a preliminary arraignment during which I was advised of my right to have a preliminary hearing and of my right to counsel.

[I I have received a summons wherein I was advised of my right to have a preliminary hearing and of my right to counsel. I

knowingly, voluntarily, and intelligently make this waiver of my preliminary hearing.

Signed this **2** ⁴⁻ day of _____ Lam`
Alto      ey for Defendant (if any)

    (Defendant)

    (Attorney)

**JOHN P.** GARHART **ESQ**
**1001 STATE STREET**
**14TH FLOOR ERIE, PA**
**16501**

I HAVE DETERMINED THAT THE DEFENDANT HAS MADE A KNOWING, VOLUNTARY, AND INTELLIGENT WAIVER OF HIS RIGHT TO A PRELIMINARY HEARING.

11/27/03 Date _____, District Justice

My commission expires first Monday of January, **2006.**          **SEAL**

AOPC 601-99          FORM PRINTED:11/24/03 2:57:05 PM

Report   **Date:11/24/03**

# CURRENT BAIL INFORMATION

Time:  **3:29**
Mag. Dist. No.: **06-3-02**

System   **Date11/24/03**

Docket Number: **CR- 0000042 - 03**

Report Id: CSS25R

Defendant Name: **SANDERS, MARK**

Last Bail Action: **SET**   Date: **2/13/03** **Time0: OOAM**

Current Set Amount: **J1** _____ **250,000.00** Date:- **02/13103**

Common Pleas Court Order Number:

Event Type:                              Date: _____   Time:

Release Type 1: **UNSECURED BAIL** _____   Release

Type 2: Monetary Release Type: _____

I

| SURETY TYPE | SURETY NAME AND ADDRESS | SECURITY POSTED TYPE . AMOUNT | PAID IN AMOUNT |
|---|---|---|---|
| | | | |

| LAST SURETY TYPE | LAST RECEIPT NUMBER | LAST RECEIPT DATE | LAST RECEIPT AMOUNT | LAST SURETY TYPE | LAST REFUND DATE | LAST REFUND CHECK NUMBER |
|---|---|---|---|---|---|---|
| | | | | | | |

Nominal/Unsecured Surety: - _____ **SANDERS. MARK**
Release Conditions in Addition to Bail Bond Conditions:

Domestic Violence Conditions Imposed? **N Q.**

Bail Forfeiture Amount: $ _____   Date of Execution of

Forfeiture: _____   Bail Forfeiture Set Aside Amount:

$ _____

Reason for Last Bail Action of:

A503A-97
**COPY: CLERK OF COURTS**
**PRINTED: 11/24/03 3:29:28 PM**

| 1. Docket Number of Final Issuing Authority | 2. Docket Number of Initial Issuing Authority | | OTN | H 687927-2 |
|---|---|---|---|---|
| CR-0000042-03 | 30-~?-L '.3 | | | |

| 4. Final Issuing Authority/to be completed by Final Issuing Authority | 1 n | 5. Transferred from Initial Issuing Authority | nI4TRICT_Nn |
|---|---|---|---|
| FRANK ABATE, JR. | 06 3 02 | JOHN A. VENDETTI | 06 1 03 |

| 6. Name and Address (Last Name First) | 7. Date of Transfer | 8. Docket No. of Initial Issuing Authority |
|---|---|---|
| SANDERS, MARK 1931 W 32ND ST BRIE, PA 16508 | 03124 103 _ | CR-0000045-03 |

9. Affiant Who Signed Complaint (Name and Address)

JAY D. MCKEE
PA STATE POLICE TROOP ●E●
PO BOX 10607
ERIE, PA 16514

| 10. Dale of Birth | 1.Sex | 12. Race | 13. Operator License Number | 14.S rate | 15.ORI | 16. OCA | 17. Badge Number/Officer I.D. |
|---|---|---|---|---|---|---|---|
| 08129163 | M | W | | PA | PAPSP2500 | | 5751 |

| 18. Date of Arrest | 19. Date Complaint Filed | | 20. | | 21. Warrant | 22. Summons | ~,r~Iirmnary Arraignment | 25. Date waived to Court |
|---|---|---|---|---|---|---|---|---|
| MM DD YY or Citation | IssuedMM DDYY Summons MM DD | Date YY | Issued MM DD YY | Returned MM DD YY | 1AI~° ° *DDYy24.Time | MM DD YY |
| of Filed | 102 121 03 | I | 021 12 103 | L | 02 1131 03 10:00A 11 1241 | 03 |

| 26. Prelim.Hear.JSum.Trial | 27. Address of Preliminary Hearing/Summary Trial | 32. Date Set For Preliminary Hearing | 33. c o |
|---|---|---|---|
| I I | | | |

| 28. Description of Charges | ~ar | Grading | 2 t,tl nbn~uate, | 3U.~m1.aand | 31. Disposition | MM DD YY | T |
|---|---|---|---|---|---|---|---|
| A IJ,r.1 1a.+ | rift} >●;tfyu.~ 4e~ rcl.ae .. | | 31 | 96 | 904A2 | WAV | 11 24 | T |
| 2 DEC | BUS PRACT-FALSE a '4: -v | | 31 | | CC4107A6 | DIS | 06 23 03 | J |
| 6-● Y | | | | 96 | C49 4A1 | DIS | 06 12 0 | |
| _ D | INSPIRE UNSWORN FAL- AUTH WRITTE | | | 96 | CC4904A1 | WAV | 02 21 03 | J |
| 5 | lw | | | | I1~ | AV | | |
| | AMPER WITH PUBLIC RECORD I●● | M | 12 | 31 | 96 | CC491 1A2 | WAV | |

| 34.Advised of His Right | Yes | No | 35. Public Defender | Yes | o | 36. Application Provided | Yes | No | 37. In cases where so required. the | MM DI,0 | YY |
|---|---|---|---|---|---|---|---|---|---|---|---|
| to Apply for Assignment of Counsel? | | | Requested by the Defendant? | | | for Appointment of Public Defender? | X | | within named Issuing Authority, did make a reasonable effort to settle the difference between the Defendant and the Complainant on: | D | |

| 38. Codefendant(s) Name | 39. OTN | 38. Codefendant(s) Name | 39. OTN |
|---|---|---|---|
| a STRONG. DANIEL | a | c STRONG. CHRIS | c |
| b GREHL (STRONG). JULIE | b | d BAGNONI, DAVID | d |

| 40. Enter Clot witness for Complainant— Enter'D' I0, Witness for Defendant | 41. Witnesses Names and Addresses and Names and Addresses of persons (not more than 2), Defendant wishes to be Notified for trial | 42. Sworn | 43. Testified | 44 Defense Persbru to be notaled |
|---|---|---|---|---|
| C,TURNER, GEORGE | 10 PENNINCULA DR..ERIE.PA 16505 | | | |
| RUSSO, MARK | PA STATE POLICE,PA | | | |
| HARVEY. PETER TPR. | PA STASS POLICE,PA | | | |
| C WILLIAMS (KNITS), SOPHIA M | 333 E. 8TH. ST.,ERIE, PA 16503 | | | |
| GALBREATH, DONALD | 9081 LAKE PLEASANT,ERIE.PA 16509 | | | |
| SPARKS. TACK | 756 E 9TH. ST..ERIE.PA 16503 | | | |

| Attorney's Name and Address for: | 48. I.D. | No. |
|---|---|---|

| 45. Commonwealth |
|---|

COPY: CLERK OF COURTS

| 64. Date Transcript Sent to Court MM DD YY | Certified this _____ 2V day of | I d.3 |
|---|---|---|
| 11 1 24 1 03 | My commission expires first Monday of January, 2006. | SEAL |

I, the above named Issuing Authority ce 3   rtify that this Transcript is a true

AOPC 501A-93ATE **PRINTED11/24/03**

| 1. Docket Number of Final Issuing Authority | 2. Common Pleas Docket Number | 3. Slate Identification Number |
|---|---|---|
| CR-0000042-03 | I I /3 | OTN  H 687927-2 |

| 4. Final Issuing Authorityto be completed by Final Issuing Authority | DISTRIrT | (I | '_ 5. Transferred from Initial Issuing Authority | DISTRIr T C) |
|---|---|---|---|---|
| FRANK ABATE., JR. | 06 3 | 02 | JOHN A. VENDETTI | 06  1 03 |

| 6. Name and Address (Last Name First) | 7. Date of Transfer | 8. Docket No. of Initial Issuin~Q Authority |
|---|---|---|
| SANDERS, MARK  1931 W 32ND ST  ERIE, PA 16508 | 03124 103 | CR-0000045-03 |

9. Attlant Who Signed Complaint (Name and Address)

JAY D. MCKEE
PA STATE POLICE TROOP "E`
PO BOX 10607
ERIE, PA 16514

| 10. Date offDBinh  YY | 11. Se | 12. Race | 13. Operator License Number | 14.SI ate PA | 15.ORI | 16. OCA | 17. Badge Number/Officer I.D. |
|---|---|---|---|---|---|---|---|
| 08 2963 | M | W | | | PAPSP2500 | | 5751 |

| 18. Date off₀Arrest  YY | 1 19. Complaint FiledMMDDW  or Filed1 0212103 | 20. Summons Da  VIM  DO | Is M | 21. arrant | 22. Summons Returned | .-_rg₄d'minary Arraignment | 25. biro Waived to Court |
|---|---|---|---|---|---|---|---|
| | | | | 02112 103 | | 021 13103 10:OOA 111 | 24143 |

| 26. Prelim.He ar.ISum.Tr ial | 27. Address of Preliminary Hearing/Summary Trial | | | 32. Date Set For Preliminary Hearing  MM DO YY | 33 C O N |
|---|---|---|---|---|---|

| 28. Description of Charges | ₁QI | Grading | 1y.~titenSe₀Uate | 30. t n,a,rnd | 31. Disposit ion | | | |
|---|---|---|---|---|---|---|---|---|
| iG  SPIRE TAMPER WITH PUBLIC RECORDIINFO | C | 1 | 12 31 96 | CC4911A1 | WAV | 11 24 03 | |
| 2  CONS PIRE  DEC BUS PRACT-FALSE/MI$ STAT | C | | 12 31 96 | CC4107A6 | DIS | 06 23 03 | J |
| | | | | | | 06 02 03 | J |
| | | | | | | 02 21 03 | J |
| 6 | 1 | | | | | | |

| 34. _Advised of His Right  Yes    No | 35. Public Defender  Yes    No | 36. Application Provide  for Appointment of | $ | No | 37. In cases where so required. I the  MM Date  YY |
|---|---|---|---|---|---|
| to Apply for Assignment  X | Requested by the  Defendant? | Public Defender? | | | with named Issuing to settle Authority, me did make a reasonable effort  difference between the Defendant and the |
| of Counsel? | | | | | Complainant on: |

| 38. Codefendant(s) Name | 39. OTN | 38. Codefendant(s) Name | 39.OTN |
|---|---|---|---|
| a | a | c | c |
| b | b | | |

| 40. Enter'C' for witness  Tor Complainant-  Enter for witness  for Defendant | 41.Witnesses  (not more  than | Names          and Addresses and Names and Addresses of persons  2), Defendant wishes to be Notified for trial | 42. Sworn | 43. Testified | 44. betense Poison o be notified |
|---|---|---|---|---|---|
| C | REICHARD. WALLACE | 3009 CASCADE ST, ERIE PA 16508 | | | |
| C | ZURN, MARY | 942 W. 31ST. ST.,ERIE.PA 16508 | | | |
| C | BANKO. GORDON | 2024 SCHAPER AVE..ERIE,PA 16502 | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| Attorney's Name and Address for: | 48. I.D. | No. |
|---|---|---|
| 45. Commonwealth | | |
| 46. Complainant | | |

| 64. Date Transcript Sent  MM ᵇOD ʳᵗ YY |
|---|
| 11 ₁24 103 |

*xy ~k r .f₀*

Certified this _____ akfy of. _____

My commissi.0    -    t'1VIofWaj1Of'January, **2006**.    **SEAL**

!, the above named lss'txirf    ut orlt   certifv that this Transcript is a true

AOPC 501A-99

| 1. Docket Number of Final Issuing Authority | | Identification/Region Number | | OTN | H 687927-2 |
|---|---|---|---|---|---|
| CR-0000042-03 | IZ ~'f | | | | |
| | 9    1¹ʸy | (0 3) | | | |

| 4. Final Issuing Authority/to be completed by Final Issuin·H th ri | DISTRICT NO | 5. Transferred from Initial Issuing Authority | | I I IC .NU |
|---|---|---|---|---|
| FRANK ABATE, JR. | 06 3 02 | JOHN A. VENDETTI | | 06 1 03 |

**6. Name and Address (Last Name First)**

SANDERS, MARK
1931 W 32ND ST
BRIE, PA 16508

| 7. Date of Transfer | 8. Docket No. of Initial Issuing Authority |
|---|---|
| 03124 103 | CR-0000045-03 |

REPORT OF JUDICIAL

CRIMINAL PROCEEDINGS

ATTN: CLERK OF COURTS

This Portion of this form (commencing with block 9) is

your coped pria e^b~csignee.

| 9. Dale.of F,lirl | e.Code | F ENTER TYPE OF |
|---|---|---|
| | | BLOCK 10 DE IN |

1. Indictment   2.
3. Grand Jury Waiver   Information
4. Other (specify below):

| 11. Date of Birth | 2. Sex | 13. Race | 14. Operator License Number | 15.st ale |
|---|---|---|---|---|
| 081 29163 | M | W | | PA |

| 16. Date 1 ,rest | 17. Date Cam plaint. Filed | LAST BAIL STATUS PRIOR TO SENTENCING | ·16. DatePreliminary Arrai nment | 20. Dare wal.ed to Cau |
|---|---|---|---|---|
| MM    YY | ar Citation sued   MM   DD | | MM   DD YY   19.~Ime | MM DID Y1~ |
| | or Filed   021 | EXPLANATION OF BAILCODES | 02 13103   10:00A | 111 24103 |

| 21. eim.Flear.ISum.Trial DD ꞏY | 22. Date Bail Set MM DD | | CURRENT BAIL INFORMATION   PAGE | 24. Amount $ | '25. Dale Posted |
|---|---|---|---|---|---|
| | | ~,~ 03 | | | |

·. Final Charges:
Criar p
Indkare Letter ʟ¹ L'rie(st on

| 27. Description of charges | On  r. CharCde | 28. Offense Date  MM DD YY | 29. gaction and Subsection  Purdon's Cite | which New Charge(s) appear. |
|---|---|---|---|---|
| | | 31 9'90 A2-:,w | ea'~}11~'~a:7rr~WAV | |
| DE BUS PRACT-FALSE   ꞏvww:iwM;j:4ꞏ   C CO   SPI ꞏ:UN:Wꞏ PALS | | | 18 4107 A6 | DIS |
| AN:WRI  :4 | | Mm, (DQ .7 | LIZ 1.ꞏ | S DI |
| CONSPIRE UNSWORN   AUTH WRITTE   PALS | D | C ,r 1P | | |
| TAMPER WITH ꞏ₁:LIC RE ꞏRD i.   r..r,+.,Mrif)FUꞏ~.~. | E | 12 31 9-1; | 18 :903   :A1 | WAV WAV |
| TAMPER WITH PUBLIC RECORD/INFO | F | 2   31/9. C4911A2: | 18 54911 §§A2 | WAV |

| TYPE OF DISPOSITION | | | OTHER INFORMATION | |
|---|---|---|---|---|
| | (101) | GUILTY PLEA | FINAL | 31. PRE-SENTENCE INVESTIGATION | YES |
| | (102) | GUILTY PLEA TO A LESSER OFFENSE | PLEA | A. PRE-SENTENCE-STATE | |
| | (103) | NOLO CONTENDERE | | B. PRE-SENTENCE-COUNTY | |
| | (201) | NOLLE PROSSED/WITHDRAWN | | C. PSYCHIATRIC EVALUATION | |
| | (202) | QUASHED/DISMISSED/DEMURRER SUSTAINED | DIS-MISSAL | D. PRE-SENTENCE AND PSYCHIATRIC | |
| | (203) | OTHER (SPECIFY) | | E. NOT REQUESTED | |
| | (204) | DISMISSAL UNDER PA. R, CRIM. P. 1100 | | 32. TRIAL COMMENCED DATE (   I | |

| 1. Docket Number of Final Issuing Authority | | 2. Court Case Number | | 3. Initial Issuing Authority Number | | |
|---|---|---|---|---|---|---|
| CR-0000042-03 | | C;Z;.~. *q'O* | | | OTN | H 687927 -2 |

| 4. Final Issuing Authority/to be completed by Final Issuing *ority | | DISTRICT NO | 5. Transferred from Initial Issuing Authority | | D I I | N . - |
|---|---|---|---|---|---|---|
| FRANK ABATE, JR. | | 06 3 02 | JOAN A. VENDETTI | | 06 1 | 03 |

| 6 Name and Address (Last Name First) | 7. Date of Transfer IV I | 8. Docket No. of Initial Issuing Authority |
|---|---|---|
| SANDERS, MARK 1931 W 32ND ST BRIE, PA 16508 | 03 24 103 | CR-0000045-03 |

REPORT OF JUDICIAL CRIMINAL PROCEEDINGS ATTN: CLERK OF COURTS

9) is This Portion of this form (commencing with block to be completed by you your appropriate designee.

| 9. Date of Fillin YY | 0.Cod e | * ENTER TYPE OF FILING CODE BLOCK IN |
|---|---|---|
| 1. Indictment 2. 3. Grand Jury Waiver | Information 4, Other (specify below): | |

| 11Date of Birth | YY 63 | 2. Sex 13. Race 14. Operator License Number | 15.St ate |
|---|---|---|---|
| 081 29 | | M W | pA |

| 16 to of Arrest M DD yy | 17. Date Complaint issued or Filed MM DO 2 ~~ Q3 | LAST BAIL STATUS PRIOR TO SENTENCING | % I18. Date Preliminary MM DD yy 021 131 03 | Arraignment 19. Time 10:00A | 20. Dale Waived to Court MM DD YY 11, I 24103 |
|---|---|---|---|---|---|
| | | EXPLANATION OF BAIL CODES | | | |

| 21. Frefm.HeariSum.Trna MM I DO I YY | 22. Date Bail get MM I DD | 23. Code | "SEE CURRENT BAIL INFORMATION PAGE" | 24. Amount $ | 25. Date Posted II | 26. Final Charges: Ytmi Chage edicate Letter |
|---|---|---|---|---|---|---|

| 27. Description of charges | | | Ofl G-28.p tten Cde.MM DD | 29. geotion and ubsection | Pardon's Cite | wha31 New Chn ge(s) appear. 30. Disp |
|---|---|---|---|---|---|---|
| G I | NSPIRE | TAMPER WITH PUBLIC RECORD/INFO | C(1212/3 1/96CC49 11AIS | 18 9903 IP)A1 | | WAV V |
| | CONSPIRE | DEC BUS PRACT-FALSE/MIS STAT | 12/31/96 CC4107A6 S | 18 $903 §SA1 | | DIS |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |

| | TYPE OF DISPOSITION | | OTHER INFORMATION | |
|---|---|---|---|---|
| (101) | GUILTY PLEA | FINAL | 31. PRE-SENTENCE INVESTIGATION | YES |
| (102) | GUILTY PLEA TO A LESSER OFFENSE | PLEA | A. PRE-SENTENCE-STATE | |
| (103) | NOLO CONTENDERE | | B. PRE-SENTENCE-COUNTY | |
| (201) | NOLLE PROSSED/WITHDRAWN | | C. PSYCHIATRIC EVALUATION | |
| (202) | QUASHED/DISMISSED/DEMURRER SUSTAINED | ols-MISSAL | D. PRE-SENTENCE AND PSYCHIATRIC | |
| (203) | OTHER (SPECIFY) | | E. NOT REQUESTED | |
| (204) | DISMISSAL UNDER PA. R. CRIM. P. 1100 | | 32. TRIAL COMMENCED DATE | |
| (301) | JURY | | 33. NO. TRIAL DAYS | I I |
| (302) | COURT | TRIAL | 34. DISPOSITION DATE | |
| (311) | NOT GUILTY | VER- | 35. SENTENCE DATE | |
| (312) | GUILTY | DICT | 36. EFFECTIVE DATE OF SENTENCE | |
| (313) | GUILTY OF A LESSER CHARGE | | 37. FUGITIVE | YES |
| (401) | ARD COUNTY | No | 38. DEFENSE COUNSEL | YES |

AOPC 501 B-96 **COPY: CLERIC OF COURTS** .DJ LEVEL DISPOSITION – DO NOT SEND TO AOPC

| OTN         H 687927-2     DJ No: 06-1-03 |                  Date of Charge(s):   12/31/96 |
| CC No: | DJ Docket No: CRS0000045"03 |

| Cornmonwealth.vs. `Defendant Name and Address) | NEXT COURT ACTION         Date/ Time/ Location |
| SANDERS, MARY,<br>1931 W 32ND ST<br>ERIE, PA 16508 | 2/21/03 9:00AM<br>140 WEST **6TH STREET**<br>**CENTRAL COURT ROOM #117**<br>**ERIE, PA 16501** |

**CHARGE(S):** 18 §4904 **§§A2 UNSWORN PALS AUTH FORGED DOC**
18 §4107 **§§A6 DEC BUS PRACT—FALSE/MIS STATE CRED**
18 §903 **§§A1**
ADDITIONAL CHARGES MAY EXIST. PLEASE SEE ADDITIONAL CHARGES PAGE.

TYPE(S) OF RELEASE:

■ **R OR**            1- Unsecured Bail            ■ Nonmonetary Condition(s) (see additional page(s))
O Nominal Bail         ■ Monetary Condition(s) in the amount of $

THE CONDITIONS OF THIS BAIL BOND ARE AS FOLLOWS:
1. The defendant must appear at all times required until full and final disposition of the case.
2. The defendant must obey all further orders of the bail authority.
3. The defendant must give written notice to the bail authority, the clerk of courts, the district attorney, and the court bail agency or other designated court bail officer, of any change of address within 48 hours of the date of the change.
4. The defendant must neither do, nor cause to be done, nor permit to be done on his/her behalf, any act as proscribed by Section 4952 of the Crimes Code (relating to intimidation of witnesses or victims) or by Section 4953 (relating to retaliation against witnesses or victims), 18 Pa.C.S. §§ 4952,4953.
5. The defendant must refrain from criminal activity.

TYPES OF SECURITY:

El Cash/Equivalent        0 Govt Bearer Bonds        E7 Realty w/in Commonwealth

TOTAL AMOUNT BAIL SET (IF ANY): $ - _____  **250,000.00**        (see sureties page)

This bond is valid for the entire proceedings and until full and final disposition of
the case including all avenues of direct appeal to the Supreme Court of Pennsylvania.

I AGREE THAT I WILL APPEARALL SUBSEQUENT PROCEEDINGS AS REQUIRED AND CO LY WITH ALL THE CONDITIONS OF THE BAIL BOND.

THIS BOND SIGNED ON _____

at _____                  PENNSYLVANIA                     (Signature of Defendant)

Signed d acknowledged before me this ____ day of k-Jr R _ _ , 0i

(SEAL)

JUDGE OR ISSUING AUTHORITY
**VENDETTI, JOHN A**

DATE                    2/13/03

My commission expires first Monday of January, **2006**

PLEASE SEE ATTACHED PAGES FOR ADDITIONAL INFORMATION.

AOPC 414A1-99        **PRINTED:** 2/13/03 11:09:19