IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WARREN DURHAM JR., | ) | CIVIL ACTION |
| Plaintiff | ) | NO. 02-82 ERIE |
| V. | ) | |
| | ) | District Judge Cohill |
| JAMES D. WASHBURN, | ) | Magistrate Judge Baxter |
| ET AL.         Defendants. | | |

**PLAINTIFF'S MEMORANDUM
IN SUPPORT OF HIS OBJECTION**

A motion to dismiss pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6) must be denied unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claims that would entitle him to relief. A 12(b)(6) motion is directed to the face of the complaint, is not favored, and should be granted sparingly and with caution only where it appears to a certainty that no set of facts could be proven at trial entitling a Plaintiff to relief. See: Hassoun v. Cimmino, 126 F.Supp.2d 353 (D.N.J.2000); Conley v. Gibson, 78 S.Ct. 99 (1975).

Summary judgment may be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The evidence, together with all inferences to be drawn therefrom, must be read in the light most favorable to the party opposing the motion. Brown v. Muhlenberg TP., 269 F.3d 205 (3rd Cir.2001).

**STATEMENT OF THE FACTS**

On the morning of January 23, 1996, at approximately 6:15 a.m., while Plaintiff was at his home, Defendant Erie police knocked on the door and was admitted in by Plaintiff. The Defendants inquired as to the owner of the Oldsmobile parked in front of Plaintiff's home. Upon responding that the car was his, Plaintiff was arrested.

While in custody at the Erie police station, Plaintiff was instructed to relinquish the keys to his car. Defendants thereafter seized Plaintiff's car from his home, towed it to the City Hall

1

parking lot and illegally searched the interior and trunk areas.

On January 26, 1996, Plaintiff's car was subsequently seized by Defendants, removed from City Hall parking lot and transported to West End where Defendants conducted further illegal searches, removed Plaintiff's property and it is alleged that the car was destroyed in a crushing machine.

## EQUITABLE TOLLING DOCTRINE

The Defendants assert in their motion to dismiss that the Plaintiff has failed to file his civil rights action within the applicable two-year statute of limitations. However, the Defendants are mistaken.

It is clear that federal courts use the limitation period for personal injury standard under Pennsylvania law, applying a two-year statute of limitations to a claim under Section 1983. Phillips v. Heydt, 197 F.Supp.2d 207 (E.D. Pa.2002).

Though these limitation periods generally apply, the Court has recognized that they cannot be applied in all situations. Where a plaintiff has difficulty identifying precisely when the illegal conduct occurred or a violation is "continuous and ongoing," the filing requirement, is subject to waiver, estoppel, and equitable tolling. Zipes v. Trans World Airlines, Inc., 102 S.Ct. 1127 (1982).

To demonstrate a continuing violation, the plaintiff must show that: (1)at least one discriminatory act occurred within the statutory period, and (2)the conduct was part of an ongoing pattern. Phillips, at 218. See,e.g., Lake v. Arnold, 232 F.3d 360 (3rd Cir.2000)(federal courts may toll statutes of limitations for federal laws where the plaintiff "in some extraordinary way has been prevented from asserting his or her rights.").

In the case *sub judice*, the appropriate factual circumstances which would support a tolling of the two-year statute of limitations applicable to Defendant West End is the **newly discovered evidence** received by Plaintiff on May 17, 2004. This **newly discovered evidence** is in the form of a newspaper article, dated May 10, 2004.

It must be noted that on May 19, 2004, Plaintiff filed a Motion to Supplement Complaint

based on the contents of the newspaper article. Specifically, the Erie Times' News reported that Defendants West End, owner Daniel Strong, Christopher Strong, Julie A. Grehl and other co-defendants were accused of vehicle-title fraud in a criminal matter. Subsequently, the Defendants pled guilty to tampering with public records in plea agreements. Additional civil actions were agreed upon.

It cannot be disputed that this **newly discovered evidence** of fraud and public record tampering demonstrated an Organized Enterprise of which the sole purpose was to deprive individuals, such as Plaintiff, of property in which to enrich themselves.

Moreover, the **newly discovered evidence** clearly demonstrate that Defendants conspired to violate Plaintiff's constitutional rights when illegally seizing his property and allegedly destroying the said property. A review of *APPENDAGE "A"* ATTACHED to Defendant City of Erie's Motion to Dismiss Amended Complaint, demonstrate the methodology employed by West End to **"seize"** victims property then convert the proceeds to legit business dealings.

In defining **newly discovered evidence**, courts have consistently held that the evidence must have been in existence at the time of trial. Fed.R.Civ.P. 60(b)(2). To succeed in opening a judgment pursuant to Rule 60(b)(2), "the evidence must have been discovered and the failure to learn must not have been caused by lack of diligence." Hudson's Bay Company Fur Sales, Inc. v. American Legend Cooperative, C.A. No. 86-2899 (N.J.1987). Furthermore, the **newly discovered evidence** must be "material to the issues involved, yet not merely cumulative or impeaching and must be of such a nature that it would probably change the outcome." (citing United States v. Meyers, 484 F.2d 113,116 (3d Cir.1973).

It is obvious then that West End cannot escape its liability for constitutional wrong-doing and violating federal law.

### ILLEGAL SEARCH AND SEIZURE

Curiously, West End avers that no deprivation of any federal rights under color of law can be attributed to it. However, the Due Process Clause of the Fourteenth Amendment prohibit's the states from depriving any person of property without "due process of law." Dusenbery v. U.S., 122

S.Ct. 694 (2002). A **"seizure"** of property occurs when "there is some meaningful interference with an individual's possessory interest in that property." Solidal v. Cook County, Ill., 113 S.Ct. 538 (1992). A **"search"** occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A search is per se unreasonable, and thus violates the Fourth Amendment, if the police making the search have not first secured from a neutral magistrate a warrant that satisfies the terms of the Warrant Clause of the Fourth Amendment. Robbins v. California, 101 S.Ct. 2841 (1981).

In the instant case, the Erie police acted unreasonable when after three days (January 23-26, 1996), alone with West End **"seized"** the Plaintiff's car from the City Hall parking lot without a warrant from a neutral magistrate and took it to West End's lot.

Even when the state's interest is sufficiently compelling to justify a warrantless seizure that is minimally intrusive, the seizure will be unreasonable if it is disproportionately intrusive. While the state's interest in drug interdiction, for example, is sufficient to render reasonable a brief but warrantless detention of suspicious luggage for a canine "sniff," such detention for ninety minutes constitutes an unreasonable **"seizure"** under the Fourth Amendment.

The Defendant here, however, are urging this Court to accept as reasonable a three-day **"seizure"** of Plaintiff's car without a "valid" warrant. New York v. Belton, 101 S.Ct. 2860 (1981)(having concluded there was probable cause for the arrest, the search of the vehicle was improper incident to that arrest. The officer could not legally search the passenger compartment because he was not an occupant of the car as required by law).

As noted above, in opening a judgment pursuant to Rule 60(b)(2), the evidence must have been discovered after trial and the failure to learn must not have been caused by lack of diligence. In defining **newly discovered evidence**, courts have consistently held the evidence must have been in existence at the time of trial.

Based on the record in this case, West End did illegally **"search"** and **"seize"** Plaintiff's car and other property.

## NEW DEFENDANTS

In the Plaintiff's Motion to Supplement Complaint (Document #31), and based on **newly discovered evidence**, the Plaintiff did request and receive permission from the Court to add new Defendants.

## RICO CLAIMS

"Under the modern federal rules [of civil procedure], it is enough that a complaint put the defendant on notice of the claims against him. It is the function of discovery to fill in the details, and of trial to establish fully each element of the cause of action." Rose v. Bartle, 871 F.2d 331 (3rd Cir.1989)(quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786,790 (3d Cir.1984)(reversing district court's dismissal of RICO count)>

In considering the findings of fact by the Seventeenth Statewide Investigating Grand Jury and Trooper Peter Harvey, a vehicle fraud investigator for the Pennsylvania State Police, the Plaintiff here is satisfied that the methodology employed by Defendants West End and City of Erie was the same used in **seizing** and (alleged) destruction of Plaintiff's car and other property.

Briefly, Plaintiff's car was ordered towed by Erie police from his home on January 23, 1996, as a result of a criminal matter. Subsequently, on January 26, 1996, Plaintiff car was taken to West End. According to the record in this case, Plaintiff's car was destroyed by West End in October of 1996.

Plaintiff asserts that his property, like that of many other victims, was systematically taken by Defendants to illegally enrich themselves.

West End, a "salvor," was/is engaged in the business of acquiring abandoned vehicles for various purposes, including junking them, selling their parts or rebuilding and reselling the entire vehicle. Chapter 253 of the Motor Vehicle Code sets out procedures for salvors. Also, the Motor Vehicle Code allows police to remove a vehicle if the vehicle is evidence in a crime. However, according to Trooper Harvey, vehicles removed under these conditions are not considered "abandoned," and are not to be disposed of as such. Additionally, a MV-952 must be given to the salvor and accompany the vehicle. This form is required to be submitted by the salvor to

5

PennDOT within 48 hours. When a salvor receives an abandoned vehicle, the salvor is required to remove the license plates and the inspection sticker and forward the license plates to PennDOT immediately.

It must be noted that all parties was aware that the Plaintiff was the owner/operator of the 1984 Oldsmobile with the Ohio license plates. That Ohio had just recently issued those license plates in December of 1996. Notwithstanding that Plaintiff's car was being held as evidence because of an alleged rape. (Exhibit A)

However, in a fraudulent manner, Plaintiff's car was conveniently changed to a 1982 Royal with a different VIN number. This was a necessary step in the process of depriving Plaintiff and other victims of his property ... as that was an integral part of the Organization's method of operation.

Similarly, according to *APPENDAGE "A,"* Trooper Jay McKee testified before the Grand Jury about a 1993 Cadillac Eldorado towed to West End to be repaired, however, following a dispute between West End and the car owner, a salvage title was obtained; the MV-952 indicated *"no record found"* for the last registered owner, thus, the car was sold to another individual. The Plaintiff, not unlike "Eldorado," his MV-952 was also titled *"no record found,"* despite the fact that police officer Ben Preston, Badge #46 **"seized"** Plaintiff's car from his home.

Similarly, Trooper McKee gave testimony concerning a booted 1989 Chevy Celebrity towed to West End and later contacted by the owner. The MV-952 indicated *"no record found,"* and the Celebrity's value was listed as **"junk."** Plaintiff's car was also listed as **"junk"** .. *"no record found."*

Similarly, Rachael Drake (one-time employee of West End) testified that West End had a computer program and at the direction of Dan Strong she was required to make up fictitious ads, photocopy them and attach them to abandoned vehicle paperwork which was submitted to PennDOT. According to the record, Plaintiff's car was allegedly put in a newspaper as an ad.

Similarly, Trooper McKee testified about a 1985 Jaguar, that the owner was unfortunately in jail. The vehicle was towed to West End. Once Jaguar got out of jail he contacted West End and was told his car had been sold. Jaguar's MV-952 indicated *"no record found"* for last registered

owner which allowed a salvage title from PennDOT. Subsequently, the Jaguar was sold to another individual.

The fraud and other illegal methods employed by West End to take possession of victim's cars and properties are numerous. See: (relevant portions of *APPENDAGE "A"* attached as Plaintiff's Exhibit "B")(VIN number blunders).

It is undisputed that the Defendants were employed by West End, and that they participated in the conduct of the affairs of West End Auto Body, Inc. That the Defendants maintained an interest in the Enterprise through a pattern of racketeering activity and that the Plaintiff suffered an injury as a result.

## DESTRUCTION OF THE VEHICLE

According to the record in this case, Plaintiff's vehicle was taken from the City Hall parking lot to West End on January 26, 1996. The vehicle was alleged to have been destroyed by a crushing machine at West End in October of 1996.

## MAIL AND WIRE FRAUD

Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each of the nature of his alleged participation in the fraud. However, it is not necessary to allege that the defendants have personally used the mails or wires, it is sufficient that a defendant **causes** the use of the mails or wires. See,e.g., Brewer v. Village of Old Field, 311 F.Supp.2d 390 (E.D.N.Y.2004).

West End Auto Body, Inc. was purported to be a legitimate business engaged in acquiring abandoned vehicles for various purposes, including junking them, selling their parts or rebuilding and reselling the entire vehicle. West End's real business consisted of obtaining vehicles through scams and outright taking, with the assistance of Defendants City of Erie and its police officers. These Defendants knowingly engaged in a scheme or plan for obtaining money or property by making false promises or statements involving use of the mails and wires.

Plaintiff's vehicle, like that of other victims was towed to West End pursuant to police

orders. The MV-952 indicated *"no record found"* despite the origin of the tow. Like other victims, the VIN number was altered or simply ignored, allowing the Defendants to secure salvage titles. Additionally, the vehicle's (including Plaintiff's) value was listed as **"junk,"** although sold for profits to friends and other associates.

The Defendants Daniel Strong, Christopher Strong, and Julie Grehl submitted false information to PennDOT too obtain a salvage title to Plaintiff's car, then sold the vehicle for profit, converting the proceeds to legit business dealings.

The elements of mail and wire fraud are: (1)proof of a scheme or artifice to defraud, and (2)using or causing the use of the mails or wires in order to further the fraudulent scheme. United States v. Munoz, 233 F.3d 1117 (9th Cir.2000). Is satisfied here.

WHEREFORE, the Plaintiff respectfully request that his action move forward.

## II. RULE 12(B)(4) AND 12(b)(5)

The Plaintiff has a Motion before the Court requesting Counsel for West End to provide him with the whereabouts of Defendants Christopher Strong and Julie A. Grehl.

According to Counsel, he has made inquiries as to whether the Amended Complaint has been served upon the Defendants, and Defendant Daniel Strong has contact with both Defendants.

WHEREFORE, the Plaintiff request that motion to dismiss pursuant to Rule 12(B)(4) and 12(b)(5) be dismissed.

Respectfully submitted,

*Warren Durham Jr.*
WARREN DURHAM JR.

| | |
|---|---|
| WARREN DURHAM, JR.<br>       Plaintiff | : IN THE COURT OF COMMON PLEAS<br>:<br>: OF ERIE COUNTY, PENNSYLVANIA |
| v. | : |
| | :             CIVIL DIVISION |
| ERIE COUNTY POLICE DEPARTMENT,<br>POLICE COMMISSIONER,<br>       Defendants | :           No. 13413-1997<br>: Also docketed in CRIMINAL DIVISION<br>:      at No. 00435 of 1996 |

## O R D E R

AND NOW, to-wit, this 14th day of February, 2001, it is hereby ORDERED and DECREED that Defendant's Petition For Return of Property is DENIED, in that the Commonwealth has asserted that since the Defendant has a Federal Habeas Petition that is pending before the Honorable Magistrate Judge Baxter, that the property may be needed for any re-trial of the case. Defendant has the right to re-submit his Petition for Return of Property at a future date in the event there is no re-trial.

                                BY THE COURT:

                                _____ J.

C:     District Attorney of Erie County
       Warren Durham, Jr., DB6750
         Box 244   Lower H   Rm. 206
         Graterford, PA 19426-0244

Notice was given to each party or counsel
of record by ordinary mail on  2-15-01.

VICTIM(S) SHARON PIERSON, ALLSTATE INSURANCE, NATIONAL CITY BANK AND THE COMMONWEALTH OF PENNSYLVANIA
STOLEN AND RECOVERED VEHICLE
1996 TOYOTA TERRCEL BEARING VIN JT2AC52L3T0150195 AND PENNSYLVANIA REGISTRATION PLATE BKH5401.

PIERSON bought this car with a car loan from National City. The car was stolen on 07/12/98 at which time the theft was reported to the Erie Police Department. The Erie Police Department recovered the stolen car on 09/16/98 and the car was then towed to the Erie Police Department for processing. Following processing West End Auto Body Inc. towed the car to their lot where West End Auto Body Inc. personnel completed a MV-952 declaring the car abandoned. The car was then sold to Platinum and later re-sold to Lukes Automotive. Lukes then sold the car to a customer. Prior to the car's recovery the victim's insurance company, Allstate, paid a claim to National City Bank.

DATE OF THEFT----------------------------------------------------------------07/12/98
DATE ALLSTATE PAID NATIONAL CITY CLAIM ON THIS VEHICLE-----09/15/98
DATE OF RECOVERY AND TOW-----------------------------------------------09/16/98
DATE MV-952 WAS SIGNED--------------------------------------------------10/16/98
DATE MV-956 WAS SIGNED--------------------------------------------------11/23/98
DATE PLATINUM AUTO BODY BOUGHT THE CAR----------------------UNKNOWN
DATE LUKES BOUGHT THE CAR FROM PLATINUM----------------------UNKNOWN
DATE LUKES SOLD VEHICLE-----------------------------------------------06/05/99

**Erie Police Department Officer Mark SANDERS signed** this MV-952 for West End Auto Body Inc. A review of this form shows the following discrepancies on the form: **The VIN listed on this form is wrong. The VIN listed is JT2AC52L3T1050195. The eleventh and twelfth digits should have been 01 instead of 10.** There is no vehicle year listed, there is not a title number listed and there is no mileage listed for the vehicle. The value for this vehicle is listed as **valueless except for junk, under $250.00,** even though the vehicle was only **2 years old** when stolen and recovered. No record found is listed for the owner's name even though this vehicle was towed to West End Auto Body Inc. and would have been accompanied by an Erie Police Department towed vehicle report. Also the Erie Police Department knew that the vehicle belonged to the victim due to the fact that it was a recovered stolen vehicle. The damages listed for this vehicle are suspicious as well. The vehicle was listed as having rust on it even though it was only two years old. From the attached photograph it is difficult to determine whether or not the left door and fender are damaged as reported. Vehicle was listed as being abandoned on West End property.

**Julie STRONG signed** this form for West End Auto Body Inc.

A review of the MV-956 shows that the wrong VIN was listed. It also shows that someone listed the registration plate as "N/A". No mileage was listed on this form. The

newspaper ad listed on this form was a valid ad. Note! The wrong VIN was listed in the ad.

**Julie STRONG signed** this form for West End Auto Body Inc.

Note! I located 2 MV-956 forms. Both forms appear identical with the exception that one form under the approx. value section the value $250.00 or less is crossed out. A review of Penn Dot records shows that the form with the $250.00 or less crossed out was the form submitted to Penn Dot.

Note! There is no MV-957 authorizing West End Auto Body Inc. to dispose of a vehicle with value since West End Auto Body Inc. sent in an MV-952 form listing the 2 year old vehicle as having a value of $250.00 or less.

The Pennsylvania State Police served a search warrant at West End Auto Body Inc. in March of 2000. Numerous documents related to this vehicle were located. Not located was the EPD towed vehicle slip that should have accompanied this vehicle at the time of the tow (I did receive a copy of the towed vehicle report from the EPD). A review of the West End Auto Body Inc. worksheet shows a notation that the EPD lost the towed vehicle report. Notes also show that this vehicle was **sold to R&B on 12/14/98**. This is not accurate. The vehicle was **sold to Platinum Auto Body**. This document also lists the wrong VIN for this vehicle. Note! There is not a sale price paid for this vehicle anywhere on this form.

Tow logs were reviewed and I was able to locate this vehicle on page 74 line 11 of the 1998 West End Auto Body Inc. City authorized tow logbook. This entry shows that the vehicle was towed on 09/16 and lists the vehicle's plate number as BKH5401. It shows that the vehicle was towed from 1200 Wayne to the EPD and then to lot C at West End Auto Body Inc. **Chris STRONG** was the tow truck driver for this vehicle.

Note! According to interviews conducted by this Trooper the tow truck driver was the employee who would have been responsible for providing the vehicle's VIN to the office staff. The entries also show that this vehicle was sold to R&B 12/98 and also list Auto Cycle for unknown reasons. Neither of these businesses bought this car. Platinum Auto Body bought this car.

The EPD tow log shows this vehicle entered on page 150 line #6. It shows the tow date as reported and lists the vehicle as **recovered stolen** vehicle and then lists the vehicle as salvage. The vehicle's reg. Plate is listed as well as the customer's name.
I interviewed Lee MINTER, owner of Lukes Automotive, relative to this vehicle and another vehicle that he bought from West End Auto Body Inc. MINTER stated that he sold this car to a friend of his by the name of James PEARSALL adding that he lives in Maryland somewhere. MINTER stated that he bought this car from Platinum Auto Body, not from West End Auto Body Inc. MINTER stated that he knew about this vehicle before West End Auto Body Inc. completed the paperwork for the car. He stated that he inquired about the car and was told that whenever West End Auto Body Inc. received a

title for the car he could have it. MINTER stated that he paid $4000.00 for the car adding that he knows Eric TETUAN, owner of Platinum. He stated that he helped Eric get started in business and bought the car to help Eric out with money. He stated that he sold the car for $6,000.00 adding that he didn't know what if anything Platinum did on the vehicle as far as repairs. MINTER stated that Platinum Auto Body (Eric TETUAN) put a couple of new body parts on the car and painted the vehicle. MINTER stated that he is unsure what the title said before he received it. He stated that TETUAN might have mentioned to him that the car was purchased from West End Auto Body Inc. but he was not sure.

A review of Penn Dot documents shows that I was sent two sets of documents. One set with the correct VIN and one set with the incorrect VIN.

The **incorrect** VIN paperwork shows that on 06/24/99 Lukes was mailed a letter from Penn Dot. This letter mentioned that an incorrect VIN was listed on the vehicles out of state proof of ownership. The letter requests that Lukes obtain a VIN tracing and resubmit paperwork. There is no tracing attached but we must assume that the tracing was sent in enabling Luke's customer to obtain a good title with the vehicle's correct VIN. This paperwork also shows that **Dan STRONG** signed the back of the title for West End Auto Body Inc.

The correct VIN paperwork shows that the victim purchased the vehicle on 06/25/97. This paperwork also shows that Dick SNEERINGER completed an application for correction or change of vehicle record showing that the VIN was corrected on 10/18/00. There is also a document that shows that PEARSALL sold the car to SNEERINGER on 10/17/00.

I interviewed Eric John TETUAN stated that W/N-M-28 03/23/74 459-7306 owner of Platinum Auto Body. He stated that he bought this vehicle from West End Auto Body Inc. for $800-$1100 and that he then sold it to Lukes Automotive. He stated that he could not remember exactly what he sold it for.

TETUAN stated that this was one of the few vehicles that he bought from West End Auto Body Inc. He stated that this in fact was the last vehicle that he bought from West End Auto Body Inc. TETUAN stated that he bought cars from West End Auto Body Inc. TETUAN stated that **Chris STRONG** would call him whenever West End Auto Body Inc. had a car that West End Auto Body Inc. thought that he'd (TETUAN stated that) would be interested in.

TETUAN stated that he bought the car, fixed it and sold it with the salvage title. He stated that he did not have any trouble with the VIN due to the fact that he didn't deal with the title. He stated that he just sold the vehicle as salvage and that Lukes would have needed to obtain the R-title. TETUAN stated that Lukes had trouble with the title from what he remembers.

TETUAN stated that he could not remember how much money he had to put into this car. He stated that he painted the car and fixed some dents. TETUAN stated that stated that he also put a new bumper and fender on the car.

I spoke with Sharon Marie PIERSON, W/N-F-25, at which time she stated the following: PIERSON stated that she bought this vehicle through National City for approx. $9,000.00 in 1997. She stated that she went to the Liberty Club one night and when she came out of the club the car was gone. PIERSON stated that she reported it stolen to the EPD and that a report was taken. PIERSON stated that the car was not found for several months. She stated that her insurance company, Allstate, settled with the National City Bank for her car loan. PIERSON stated that for some reason the insurance company paid the entire loan off with the exception of $1,000.00. PIERSON stated that the bank informed her of this but that she didn't have the money to pay the $1,000.00 nor did she have the car so she didn't pay the last $1,000. She stated that apparently the car was towed by West End Auto Body Inc. adding that an EPD detective brought her some of her personal items. She stated that she didn't get her new stereo system that she put in the car. PIERSON stated that she didn't know if the car was damaged by when it was stolen or not.

I received a copy of EPD theft report that shows that Officer REYNOLDS took this theft report on the date in question. The report also shows that the car was recovered on 09/16/98. The report doesn't mention anything about the vehicle being damaged when it was recovered. There was no information about the vehicle's recovery at all other than to state that the car was recovered in the 1200 block near the ball field. EPD personnel processed the vehicle. The towed vehicle log does show that the vehicle's stereo was stolen and that there was damage to the vehicle and evidence of criminal mischief done to this vehicle.

I spoke with Robin at the National City Bank Collection Department, 1-800-622-4096 Ext. 5086, relative to the auto loan that PIERSON had with the bank. Robin explained that there is still an outstanding balance on the account that has been charged off. Robin could not provide me with the balance. Robin explained that she was unable to find anything on their system that showed that National City bank was informed of this vehicle's theft. She stated that she would be unable to provide any additional information on this account due to privacy issues.

I contacted Darrel MATTHEWS of the Allstate Insurance Company Special Investigations Unit, 1721 Cochran Rd. Pittsburgh, Pa. 15220 412-572-7255. MATTHEWS stated that the claim number for this vehicle is 6652315034. He stated that the claim was filed on 07/12/98. He stated that they paid out just over $8,000.00.