**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WARREN DURHAM, JR., Plaintiff,** | ) | |
| **vs.** | ) | **C.A. No. 2-82 Erie** **District Judge Cohill** **Magistrate Judge Baxter** |
| **JAMES D. WASHBURN, et al., Defendants.** | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## I. RECOMMENDATION

It is respectfully recommended that the Motions to Dismiss filed by Defendant West End Auto Body, Inc. [Document # 47] and Defendants Washburn, DiLullo, and City of Erie [Document # 46] be granted, and Plaintiff's Amended Complaint should be dismissed.

It is further recommended that, pursuant to the authority granted to courts in the Prison Litigation Reform Act, Plaintiff's Amended Complaint be dismissed for failing to state a claim upon which relief can be granted as against Defendants Sanders, John Doe Badge No. 46, John Doe Badge No. 160, Dan Strong, Christopher Strong, Groehl, Bagnoni, and John Doe.[1]

## II. REPORT

### A. Relevant Procedural and Factual History

On March 14, 2002, Plaintiff Warren Durham, Jr., filed this *pro se* civil rights action pursuant to 42 Pa.C.S.A. § 1983. Named as Defendants in Plaintiff's original complaint were:

---

[1] The motion to dismiss filed on behalf of Defendants Washburn, DiLullo, and City of Erie, was also purportedly filed on behalf of "any John Doe defendants who are officers, employees or agents of the City of Erie...." (See Document # 46 at p. 1). This would presumably include Defendants John Doe Badge No 46 and John Doe Badge No. 160, as well as Defendant Mark Sanders, who is a City of Erie police officer; however, according to the docket entries in this case, no appearance or acceptance of service was ever filed by any attorney on behalf of these Defendants. Moreover, the docket indicates that Defendants Dan Strong, Christopher Strong, Julie Grehl, and John Doe were never served with any documents in this case, and no attorney has entered an appearance on their behalf.

James D. Washburn ("Washburn") and Dominic DiLullo ("DiLullo"), City of Erie police officers; West End Auto Body, Inc. ("West End"); City of Erie ("Erie"), and an unnamed Defendant identified as "John Doe," as well as "others not presently known to Plaintiff," all of whom were identified as City of Erie police officers. In his original complaint, Plaintiff claimed that Defendants deprived him of his property without due process of law, and conducted an unreasonable search and seizure, in violation of his rights under the fourth and fourteenth amendments to the United States Constitution.

In particular, Plaintiff alleged that, on January 23, 1996, the Defendant police officers seized his 1984 Oldsmobile automobile, towed it to Erie's City Hall, and illegally searched the interior and trunk area of the vehicle. (See Document # 1, Complaint, at ¶ 9).[2] The officers later transported the vehicle to West End on January 26, 1996, at which time another search of the vehicle was conducted and Plaintiff's personal property was removed from the vehicle's trunk. (See Document # 1, Complaint, at ¶ 10). Plaintiff also claimed that additional personal property was removed from the vehicle's interior and glovebox compartment, after which Defendants "destroyed [his] car in a crushing machine" in October 1996. Plaintiff was not notified of the car's destruction at that time.

On September 10, 1997, Plaintiff filed a Petition for Return of Property in the Erie County Court of Common Pleas. Due to apparent procedural confusion, this petition was not acted upon by the Honorable Fred P. Anthony until February 14, 2001. In the interim, Plaintiff filed a flurry of motions and written requests attempting to regain possession of his car and its contents, or to be compensated.[3] Apparently in response to Plaintiff's state court filings,

---

2 The seizure of Plaintiff's vehicle was conducted pursuant to a warrant, after Plaintiff was arrested on charges of rape and related offenses. (See Document # 15, Exhibit 2).

3 Plaintiff states in his Complaint that he wrote letters to Judge Anthony and the Civil Court Administrator, filed another Motion to Compel Return of Property addressed to former Erie County President Judge Bozza, and filed a third Motion to Compel Return of Property in the Erie County Court of Common Pleas. In addition, Plaintiff filed a Petition for Writ of Mandamus to the Supreme Court of Pennsylvania for the return of property, a "Motion to Compel the Return of Property or Equable [sic] Compensation" to the Commonwealth Court of Pennsylvania, and a

counsel for the City of Erie notified Plaintiff on September 19, 2000, that his car had been destroyed. (See Document # 15, Exhibit 1).

On February 14, 2001, Judge Anthony issued an order denying Plaintiff's Petition for Return of Property, based upon his belief that the vehicle might be needed for any re-trial of Plaintiff's case as a result of a pending federal habeas petition. (See Document # 14, unnumbered exhibit). Apparently, Judge Anthony had not been informed that the vehicle had been destroyed. Plaintiff subsequently filed this action seeking compensatory and punitive damages for the alleged illegal search, seizure and destruction of his vehicle against the original Defendants Washburn, DiLullo, West End, Erie, and "John Doe." [Document # 1]

On June 26, 2002, Defendant West End filed a motion to dismiss claiming, *inter alia*, that Plaintiff's claims were barred by the applicable two-year statute of limitations for filing an action under Section 1983. [Document # 7]. On June 28, 2002, Defendants Washburn, DiLullo, Erie, and "any John Doe defendants who are officers, employees or agents of the City of Erie," (hereinafter collectively referred to as the "Erie Defendants") also filed a motion to dismiss complaint claiming that Plaintiff's claims were time-barred. [Document # 9]. On July 15, 2002, the Erie Defendants filed a brief in support of their motion to dismiss, attached to which were a number of exhibits, including a Search Warrant and Affidavit dated January 23, 1996 ("Search Warrant"), and a Police Request for Removal of Abandoned Vehicle dated January 26, 1996 ("Removal Request"). (See Document # 15, Exhibits 2 and 3, respectively). Based upon the Erie Defendants' attachment of these exhibits, Plaintiff filed a motion to amend on July 26, 2002, seeking to name as additional Defendants the police officer identified by Badge No. 46, who signed the Search Warrant, and the police officer identified by Badge No. 160, who signed the Removal Request. [Document # 19].

On February 14, 2003, this Court issued a Report and Recommendation recommending dismissal of Plaintiff's complaint based upon his failure to file suit within the applicable two-year statute of limitations. [Document # 24]. In particular, this Court found that Plaintiff filed

Notice of Appeal to the Pennsylvania Supreme Court. (See Document # 1, pp. 5-6).

his complaint more than six years after the initial search and seizure of his vehicle, and rejected Plaintiff's claim that the "continuing violations" doctrine provided an exception to the time-bar. Despite Plaintiff's objections, District Judge Sean J. McLaughlin issued an Opinion and Order adopting this Court's Report and Recommendation and dismissing Plaintiff's case. [Document # 28]. Plaintiff filed an appeal to the Third Circuit Court of Appeals on April 4, 2003.

On March 8, 2004, the Third Circuit Court entered judgment affirming the dismissal of Plaintiff's search and seizure claim, but vacating the dismissal of Plaintiff's claim regarding the subsequent destruction of his vehicle, based on Plaintiff's claim that he did not learn of the vehicle's destruction until September 19, 2000 (within the applicable limitations period). As a result, the Third Circuit remanded the action to this Court for further consideration of Plaintiff's claim regarding the destruction of his vehicle, and this case was reopened.

On May 24, 2004, Plaintiff filed a motion to supplement his complaint pursuant to Fed.R.Civ.P. Rule 15(d), based upon "newly discovered evidence" in the form of a newspaper article dated May 10, 2004, in which it was reported that Defendant West End, its owner, Dan Strong, and other co-defendants were accused of vehicle title fraud in a criminal matter before the Erie County Court of Common Pleas. (See Document # 31, Motion to Supplement Complaint, at ¶ 4). Plaintiff's motion was granted by this Court on September 3, 2004, and Plaintiff ultimately filed an Amended Complaint on July 20, 2005 against the original Defendants, as well as newly-named Defendants Sanders, John Doe Badge No. 46, John Doe Badge No. 160, Dan Strong, Christopher Strong, Julie A. Grehl, and David Bagnoni. [Document # 44].[4] In his Amended Complaint, Plaintiff asserts claims of: (i) unreasonable search, seizure, and removal of property in violation of his rights under the Fourth and Fourteenth Amendments; (ii) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68; and (iii) mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

---

4

Although Plaintiff has identified his most recent pleading as an "Amended Complaint," the Court recognizes that Plaintiff's intent is to supplement his original complaint with additional claims that allegedly arise from the same course of conduct. Thus, in accordance with the Third Circuit Court's judgment in this matter, Plaintiff's original due process claim arising from the destruction of his vehicle remains subject to further consideration by this Court.

Defendants have filed motions to dismiss Plaintiff's Amended Complaint [Document ## 46 and 47] and Plaintiff has filed a Response and Brief in opposition to the Defendants' motions. [Document ## 55 and 56]. This matter is now ripe for consideration.

**B. Standards of Review**

**1. Motion to Dismiss**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). See also Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. The issue is not whether the plaintiff will prevail at the end but whether he should be entitled to offer evidence in support of his claim. Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 419 U.S. 232 (1974). However, a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) citing In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-30 (3d Cir.1997). Therefore, in order to survive a motion to dismiss for failure to state a claim, the complaint must only set forth sufficient information to suggest that there is some recognized legal theory upon which relief can be granted. See Swierkiewicz.

**2. Summary Judgment**

To the extent this Court has found it necessary to review and consider a number of

documents and exhibits that have been submitted by both Plaintiff and Defendants at various times in this case, the motions will be treated as motions for summary judgment pursuant to Fed.R.Civ.P. Rule 12(b).[5]

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986);

---

5

Fed.R.Civ.P. Rule 12(b) provides that "[i]f, on a motion ...to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56,..."

Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### 3. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should be done so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections,

949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).

**C. Discussion**

**1. Search and Seizure**

______This Court's Order granting Plaintiff's motion to supplement complaint specifically prohibited Plaintiff from including "claims related to the search and seizure of his vehicle, as such claims were previously dismissed by this court, and such dismissal was affirmed by the Third Circuit Court of Appeals." [Document # 37]. Nevertheless, Plaintiff alleges in his Amended Complaint that Defendants "conspired ... to unreasonably search, seize, and remove Plaintiff's property in violation of his Fourth and Fourteenth Amendments." (See Document # 44, Amended Complaint, at ¶¶ 5,10, 14). Plaintiff alleges further that Defendant Erie "maintained an official policy and custom of ... encouraging unlawful search and seizures without warrants, and failure to investigate police misconduct." (See Document # 44, Amended Complaint, at ¶ 17). As these claims are indisputably "related to the search and seizure of his vehicle" in violation of this Court's Order dated September 3, 2005, they should be summarily dismissed.

**2. RICO Claims**

Plaintiff asserts that Defendants violated various provisions of the RICO statute by "receiv[ing] money (i.e., "income") from a pattern of racketeering activity which they invested in an enterprise engaged in or which affected interstate or foreign commerce which injured the Plaintiff." (See Document # 44, Amended Complaint, at ¶¶ 6, 11, 15). Although Plaintiff provides no factual support in his Amended Complaint for this claim, it is apparent from his motion to supplement complaint that Plaintiff bases his RICO claim upon several newspaper

articles that appeared in the Erie Times-News during the period from January 16, 2003 and May 10, 2004, which Plaintiff has characterized as "newly discovered evidence." (See Document # 35, Supplemental Appendix to Motion to Supplement Complaint, unnumbered exhibits). These articles indicate that Defendants Christopher Strong, Dan Strong, Bagnoni, Sanders, and Grehl were charged by the Pennsylvania State Attorney General's Office with helping West End illegally obtain title to 14 abandoned vehicles between 1996 and 2000. However, after a four-year investigation into alleged fraud and conspiracy, including a lengthy grand jury proceeding, all charges were ultimately dropped against Christopher Strong, Bagnoni, Sanders, and Grehl in return for their agreement to complete a term of probation in the state's Accelerated Rehabilitative Disposition Program, while Dan Strong pleaded no contest to a misdemeanor charge of tampering with public records.

**a. Statute of Limitations**

Defendants contend that Plaintiff's RICO claims are barred by the applicable statute of limitations, which has been determined to be four years. Agency Holding Corp. v. Malley-Duff & Assoc., Inc., 483 U.S. 143, 155 (1987). The Third Circuit has adopted an "injury discovery rule" to determine when the time for filing a RICO claim begins to run. Forbes v. Eagleson, 228 F.3d 471, 484 (3d Cir. 2000), cert. denied 533 U.S. 929 (2001). Under this rule, a RICO claim begins to accrue when Plaintiff knew or should have known of his injury. Id. In this case, it is undisputed that Plaintiff knew or should have known of his injury, i.e., the destruction of his vehicle, on September 19, 2000. (See Document # 30, Third Circuit Court opinion, at pp. 2, 4 and 6). However, the Amended Complaint in which Plaintiff first raises his RICO claims was not filed until July 20, 2005, well beyond the expiration of the four-year statute of limitations. Thus, Plaintiff's RICO claims are time-barred, unless the amendments relate back to the date the original complaint was filed pursuant to Fed.R.Civ.P. Rule 15(c), which provides as follows:

> (c) **Relation Back of Amendments**. An amendment of a pleading relates back to the date of the original pleading when
>
> > (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Initially, it is apparent that Plaintiff's RICO claims arise out of the same conduct and occurrence set forth in the original complaint, i.e., the seizure and destruction of his automobile. Thus, with regard to the Defendants named in the original complaint, Plaintiff's RICO claims relate back to the original filing date in accordance with Rule 15(c)(2), and are not barred by the four-year statute of limitations. With regard to the Defendants brought in by amendment, however, Rule 15(c)(3) requires that: (i) they must have received notice of the institution of the action within 120 days (the period provided by Rule 4(m)) following the filing of the original complaint; and (ii) they knew or should have known that they were intended to be named as parties to the lawsuit. Both of these requirements must be met before Plaintiff's new claims may be found to relate back to the filing of his original complaint.

**i. Notice**

Plaintiff does not claim, nor is there any evidence of record indicating, that the newly-named Defendants ever received actual notice of the filing of the original complaint within 120 days of the filing date. However, it has been held that "Rule 15(c)(3) notice does not require actual service of process on the party sought to be added; notice may be deemed to have occurred when a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means." Singletary v. Pennsylvania Dept. of Corrections, 266 F.3d 186, 195 (3d Cir. 2001), citing Varlack v. SWC Caribbean, Inc., 550 F.2d 171, 175 (3d Cir. 1977). "At the same time, the notice received must

be more than notice of the event that gave rise to the cause of action; it must be notice that the plaintiff has instituted the action. Singletary, 266 F.3d at 195, citing Bechtel v. Robinson, 886 F.2d 644, 652 n. 12 (3d Cir. 1989). The issue thus becomes whether any of the new parties received constructive notice of the institution of this action such that notice may be imputed under Rule 15(c)(3).

In Singletary, the Third Circuit Court recognized two possible methods by which notice may be imputed under Rule 15(c)(3). The first is the "shared attorney" method, which is based on the notion that when the originally named party and the parties sought to be added are represented by the same attorney, "the attorney is likely to have communicated to the latter party that he may very well be joined in the action." Singletary, 266 F.3d at 196. The second is the "identity of interest" method, which "generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." Id. at 197.

**(1) Shared Attorney Method**

______"The relevant inquiry under this method is whether notice of the institution of this action can be imputed to [the newly-named Defendants] within the relevant 120 day period, ... by virtue of representation [they] shared with a defendant originally named in the lawsuit." Singletary, 266 F.3d at 196. In this case, the Office of the Erie City Solicitor ("Solicitor") has officially entered its appearance on behalf of original Defendants Washburn, DiLullo, and Erie. Yet, in both its original motion to dismiss complaint [Document # 9] and its pending motion to dismiss amended complaint [Document # 46] the Erie Solicitor has stated that the motions were also being filed on behalf of "any John Doe defendants who are officers, employees or agents of the City of Erie." By virtue of this statement, the Solicitor has essentially acknowledged representation of the interests of newly-named Defendants John Doe Badge No. 46, John Doe

Badge No. 160, and Sanders.[6] Thus, it is apparent that these new Defendants are represented by the same attorney as the original Defendants in this case.

Nevertheless, the question remains whether, by virtue of such shared representation, these new Defendants received constructive notice of the institution of this lawsuit within the relevant 120 day period. In this regard, "a plaintiff must show that there was 'some communication or relationship' between the shared attorney and the [newly named] defendant prior to the expiration of the 120-day period in order to avail him or herself of the shared attorney method of imputing notice." Garvin v. City of Philadelphia, 354 F.3d 215, 225 (3d Cir. 2003), citing Singletary, 266 F.3d at 196-97. Here, Plaintiff has failed to allege or demonstrate that there was any shared representation or communication between the Solicitor and Defendants John Doe Badge No. 46, John Doe Badge No. 160, and Sanders during the 120-day period following the institution of this lawsuit, such that notice may be imputed to said Defendants under the shared attorney method.

With regard to newly-named Defendant Dan Strong, the newspaper articles submitted by Plaintiff indicate that Dan Strong was represented during the Pennsylvania Attorney General's investigation by David Ridge, Esquire ("Ridge"), the same attorney who has entered an appearance in this case on behalf of Defendant West End. (See Article published November 25, 2003, attached to Document # 35, Supplemental Appendix to Motion to Supplement Complaint). Once again, however, there is no indication that Ridge's relationship with Dan Strong arose prior to or during the 120-day period following the institution of this lawsuit. As a result, Plaintiff has failed to show that notice should be imputed to Defendant Dan Strong under the shared attorney method.

With regard to the remaining new Defendants Bagnoni, Christopher Strong, and Grehl, Plaintiff has failed to allege any shared representation or communication between the Solicitor

---

[6] Although Sanders is not a "John Doe" Defendant, he is a City of Erie police officer. If the Solicitor has acknowledged representation of all John Doe Defendants who are City of Erie police officers, it would necessarily follow that representation would also be provided to all named City of Erie police officers.

or Ridge and any of these new Defendants, at any time whatsoever. As a result, notice of this lawsuit may not be imputed to any of these new Defendants under the shared attorney method.

**(2) Identity of Interests Method**

Notice will also be imputed if the parties are so closely related in their business operations or other activities that filing suit against one serves to provide notice to the other of the pending litigation. In this context, the Third Circuit has clarified that "absent other circumstances that permit the inference that notice was actually received, a non-management employee ... does not share a sufficient nexus of interests with his or her employer so that notice given to the employer can be imputed to the employee for Rile 15(c)(3) purposes." Singletary, 266 F.3d at 200.

In Garvin, the Third Circuit specifically found that individual police officers sought to be added in that case "certainly qualify as non-managerial employees" and, thus, held that the officers "[did] not share a sufficient nexus of interests with their employer, the City" to impute notice under Rule 15(c)(3)(A). Garvin, 354 F.3d at 227. Based on this holding, it is clear that Defendants John Doe Badge No. 46, John Doe Badge No. 220, and Sanders did not share a sufficient nexus of interests with their employer, Erie, to impute notice of Plaintiff's institution of the present lawsuit under Rule 15(c)(3).

Similarly, with regard to Defendant Bagnoni, all indications in the record are that Bagnoni was a City of Erie police officer at the time Plaintiff's vehicle was seized and searched, but subsequently became the Public Safety Director of the Erie International Airport. Although it is unclear when Bagnoni left his employment as a police officer, it is clear that, even if he was employed as a police officer at the time the present lawsuit was filed, such employment would have been insufficient to impute notice of the lawsuit under Garvin.

With regard to Defendants Grehl and Christopher Strong, Plaintiff has failed to show that they were anything other than non-managerial employees of Defendant West End at the time this suit was instituted. Accordingly, notice may not be imputed to them under the identity of interests method. The same, however, cannot be said for Defendant Dan Strong, West End's

"owner."[7] It is beyond dispute that, as the owner of West End, Dan Strong was so closely related to the operations of West End that the Plaintiff's institution of suit against West End served to provide notice to Dan Strong for purposes of Rule 15(c)(3)(A).

For the foregoing reasons, there is no basis upon which Plaintiff's RICO claims against Defendants John Doe Badge No. 46, John Doe Badge No. 220, Sanders, Bagnoni, Grehl, and Christopher Strong can be found to relate back to the filing of the original complaint. Accordingly, Plaintiff's RICO claims against these Defendants are barred by the applicable four-year statute of limitations and should be dismissed. Conversely, notice of the institution of this suit may be imputed to Defendant Dan Strong under the identity of interests method, such that Plaintiff's RICO claims against him may relate back to the filing of the original complaint, so long as the additional requirement of Rule 15(c)(3)(B) is met.

**ii. Mistake Concerning Identity of Proper Party**

"Rule 15(c)(3)(B) provides a further requirement for relating back an amended complaint that adds or changes a party: the newly added party knew or should have known that 'but for a mistake concerning the identity of the proper party, the action would have been brought against the party.'" Singletary, 266 F.3d at 200. In Singletary, the Third Circuit Court noted that "[a]ll of the commentators who address this issue ... call for Rule 15(c)(3) to allow relation back in cases in which a "John Doe" complaint is amended to substitute real defendants' names." 266 F.3d at 202 n. 5 (citations omitted). The Singletary Court noted further that "Rule 15(c)(3)(B)'s mistake requirement has been held to be met (and thus relation back clearly permitted) for an amended complaint that adds or substitutes a party when a plaintiff makes a mistake by suing the state but not individual officers in a § 1983 action." Id.,

---

7

Dan Strong is identified as West End's "owner" throughout the newspaper articles that have been submitted by Plaintiff. In addition, West End's legal counsel has acknowledged that Dan Strong is "the present owner of West End." (See Document # 59, Memorandum in Support of West End's Motion to Dismiss, at p. 8). Since West End is a corporation, it is presumed that Dan Strong is the sole shareholder of West End and is responsible for the day-to-day management of West End's business operations.

citing Lundy v. Adamar of New Jersey, Inc., 34 F.3d 1173, 1192 n. 13 (3d Cir. 1994). Neither of these scenarios is applicable here.

The "John Doe" Defendants named by Plaintiff in his original complaint were intended to identify "duly appointed police officers of the City of Erie" whose names were unknown to Plaintiff at the time he instituted this action. (See Complaint at ¶ 7). Since Dan Strong was not a City of Erie police officer at any time relevant to this action, Plaintiff could not have intended to identify him as one of the "John Doe" Defendants in his original complaint. Moreover, this is not a case where Plaintiff sued the state and now seeks to name an individual officer of the state. Thus, Dan Strong did not have any reason to know, nor should he have known, that he would have been named as an original defendant "but for a mistake" concerning his identity under Rule 15(c)(3)(B). Because the additional requirement of Rule 15(c)(3)(B) has not been met, Plaintiff's claims against Defendant Dan Strong can not relate back to the filing of the original complaint in this matter. Accordingly, Plaintiff's RICO claim against Defendant Dan Strong is barred by the applicable four-year statute of limitations and should be dismissed.

In light of the foregoing, only Plaintiff's RICO claims against original Defendants Washburn, DiLullo, Erie, and West End survive the statute of limitations challenge and are left to be considered on their merits.

**b. Merits of RICO Claims**

Construing the Amended Complaint liberally as it applies to the original Defendants, Plaintiff alleges that Defendants Washburn, DiLullo, Erie, and West End conspired with one another to "receiv[e] money (i.e., "income") from a pattern of racketeering activity which they invested in an enterprise engaged in or which affected interstate or foreign commerce which injured the Plaintiff." (See Amended Complaint at ¶¶ 6, 15). These allegations mirror Section 1962(a) of the RICO statute, which provides, in relevant part, as follows:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise....

18 U.S.C. § 1962(a).

To state a claim under Section 1962(a), a plaintiff must allege that he suffered an injury specifically from the use or investment of income in the named enterprise. Lighting Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1188 (3d Cir. 1993). The injury resulting from the use or investment of the racketeering income must be separate from any injury resulting from the racketeering acts themselves. Id. In this case, Plaintiff has based his RICO claims upon the Pennsylvania Attorney General's four-year investigation of alleged fraud and conspiracy among West End and Erie police officers to illegally obtain titles to abandoned vehicles that were located on West End's lot, which enabled West End to dispose of the vehicles by selling them to junkyards. The injury Plaintiff claims to have suffered was the destruction of his vehicle, which would have occurred as the end result of Defendants' alleged racketeering activity, not from the use or investment of any income derived from the alleged activity. As a result, Plaintiff has failed to state a viable RICO claim against the Defendants and the same should be dismissed.

**3. Mail and Wire Fraud**

Plaintiff also asserts that the original and new Defendants "violated federal law pursuant to mail fraud, 18 U.S.C. sec. 1341, and wire fraud, 18 U.S.C. sec. 1343 when knowingly and intentionally participating in the scheme and the use of interstate mails or transmission facilities in furtherance of the scheme." (See Amended Complaint at ¶¶ 7, 12, and 16). Both the mail fraud and wire fraud statutes are criminal statutes, which do not provide a basis for civil liability under Section 1983. As a result, these claims should be dismissed.

**4. Due Process - Destruction of Vehicle**

As noted earlier, the Third Circuit Court remanded this case for further consideration of Plaintiff's claim that the original Defendants deprived him of his property without due process of law when his Oldsmobile automobile was destroyed without his receipt of proper notice. Although this claim has not been restated in Plaintiff's Amended Complaint, it remains a viable

claim to be considered by this Court as a result of the Third Circuit Court's judgment. In its brief in support of its pending motion to dismiss, Defendant West End argues that the destruction of the vehicle "does not establish liability against West End for any wrongful act beyond negligence at most." (See Document # 59 at p. 4). West End's argument in this regard is identical to the argument that was raised by Defendants Erie, Washburn, and DiLullo in their brief in support of their motion to dismiss the original complaint. (See Document # 15 at pp. 5-7).[8]

The record in this case reveals that the vehicle seized on January 24, 1996, was identified on the search warrant by Defendant Washburn as a 1982 Oldsmobile Royale two tone blue four door bearing Ohio license number WOT-579, with VIN 1G3AN69Y4CM295148. (See Document # 15, Exhibit 2).[9] On January 26, 1996, Erie police submitted to West End a Request for Removal of Abandoned Vehicle, indicating that no record was found as to the ownership of the vehicle when the VIN was checked with the Pennsylvania Department of Motor Vehicles ("Pa.DMV"). (See Document # 15, Exhibit 3). The vehicle was taken by West End and placed in storage. On April 19, 1996, West End received official notification from the Pa.DMV verifying that no record was found regarding ownership of a vehicle bearing VIN 1G3AN69Y4CM295148. (See Document # 15, Exhibit 8). As a result, West End ran a classified advertisement referencing the same VIN asking the owner to claim the vehicle. (See Document # 15, Exhibit 5). After no one claimed the vehicle, West End applied to the Pennsylvania Department of Transportation ("PennDOT") for a Salvor Title for an abandoned junk vehicle bearing the same VIN. (See Document # 15, Exhibit 6). A "junk title" to the vehicle was subsequently issued by PennDOT to West End on July 3, 1996, and the vehicle was

8 In fact, West End quotes verbatim the argument that was raised by Defendants Erie, Washburn, and DiLullo in their original brief. (See Document # 59 at pp. 5-6).

9 Plaintiff identified the vehicle as belonging to him at the time the search warrant was served. (See Document # 55, Plaintiff's Memorandum, at p. 1).

ultimately crushed on October 15, 1996. (See Document # 15, Exhibits 7 and 8). Because Plaintiff was not identified as the owner of the vehicle, he did not receive prior notice of the abandonment process or the car's ultimate destruction.

None of the foregoing facts evidences any intent to deprive Plaintiff of his vehicle without proper notification. Nonetheless, Plaintiff claims that the VIN was altered to allow Defendants to secure a salvage title to the vehicle. This claim raises a genuine issue of material fact that cannot be decided at this stage of the proceeding. Thus, Plaintiff's due process claim regarding the destruction of his vehicle should be allowed to proceed.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motions to Dismiss filed by Defendant West End Auto Body, Inc. [Document # 47] and Defendants Washburn, DiLullo, and City of Erie [Document # 46] be granted, and Plaintiff's Amended Complaint should be dismissed in its entirety.

It is further recommended that, pursuant to the authority granted to courts in the Prison Litigation Reform Act, Plaintiff's Amended Complaint be dismissed for failing to state a claim upon which relief can be granted as against Defendants Sanders, John Doe Badge No. 46, John Doe Badge No. 160, Dan Strong, Christopher Strong, Groehl, Bagnoni, and John Doe.

It is further recommended that, to the extent Defendants' Motions to Dismiss request dismissal of Plaintiff's original Due Process claim regarding the destruction of his vehicle, Defendants' motions should be denied and such claim should be allowed to proceed against the original Defendants West End Auto Body, Inc., Washburn, DiLullo, and City of Erie

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond

thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

S/Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated: November 30, 2005

cc: The Honorable Sean J. McLaughlin
United States District Judge